Present: All the Justices

CLINCHFIELD COAL COMPANY

OPINION BY
v. Record No. 000700     CHIEF JUSTICE HARRY L. CARRICO
January 12, 2001

RONNIE L. ROBBINS, COMMISSIONER
OF REVENUE, DICKENSON COUNTY

FROM THE CIRCUIT COURT OF DICKENSON COUNTY
Keary R. Williams, Judge

This case involves a declaratory judgment proceeding brought by Clinchfield Coal Company (Clinchfield) against Ronnie L. Robbins (Robbins), Commissioner of Revenue of Dickenson County. In a bill of complaint, Clinchfield sought a declaration that Robbins lacked the authority to employ Larry D. Sturgill, P.C., a private accounting firm (the Sturgill firm), and to appoint its members as deputy commissioners of revenue to conduct an audit of Clinchfield's business tax records. Clinchfield also sought to have the trial court quash a summons requiring Clinchfield to produce certain records for the Sturgill firm's use in conducting the audit. From a final decree denying the requested relief, we awarded Clinchfield this appeal.

Clinchfield, an affiliate of The Pittston Company (Pittston), is engaged in the business of mining and processing coal in Dickenson County. The County imposes a severance tax upon persons engaged in the business of severing and extracting

coal in the County.  Clinchfield files monthly severance tax returns and pays severance taxes to the County.

Robbins' duties as commissioner of revenue include the enforcement of local taxes imposed by the County.  On May 27, 1998, Robbins entered into an "Auditing Agreement" with the Sturgill firm.  The agreement made the Sturgill firm "solely responsible for providing services reasonably required to accomplish" work assignments involving "the acquisition of information necessary to conduct a random audit of the coal and gas severance(s) in Dickenson County."

On June 23, 1999, the Sturgill firm notified Clinchfield that it had been selected for an audit of the coal severance taxes reported to Dickenson County for the year 1998 and that the audit would be conducted by the Sturgill firm's representatives.  The notice required Clinchfield to make available to the Sturgill firm's auditors a number of its business records.

Clinchfield objected to the performance of the audit by the Sturgill firm as being unauthorized.  Robbins then certified to the trial court his appointment of Larry D. Sturgill and four other members of the Sturgill firm as deputy commissioners of revenue and requested that they be allowed to qualify by taking and subscribing the oath required by law.  By orders entered August 31, 1999, the trial court granted Robbins' request and

2

entered of record the appointments of the five members of the Sturgill firm as deputy commissioners of revenue. In September 1999, each member took the oath prescribed by Code § 49-1, the same oath required of "[e]very person before entering upon the discharge of any function as an officer of this Commonwealth."

In September 1999, a member of the Sturgill firm who identified herself as a deputy of Robbins contacted Pittston to reschedule a severance tax audit of Clinchfield's records. In a letter to the Dickenson County Attorney on October 22, 1999, Pittston stated that it did not question the right of Robbins or the employees of his office to conduct an audit of Clinchfield's records but asserted that Virginia law did not permit audits by "independent accountants even if they purport to have been 'deputized.' " Pittston asked the County Attorney to confirm that the audit by the Sturgill firm "cannot proceed."

The County Attorney responded to Pittston on October 26, 1999, that the audit would proceed and that a subpoena would be issued for Clinchfield's records. On November 5, 1999, Robbins issued a summons requiring Clinchfield's president to appear before Robbins on November 15, 1999, and produce a number of records for the severance tax audit. Robbins intended to provide the records to the five members of the Sturgill firm for their use in performing the audit. Clinchfield then filed its bill of complaint for declaratory judgment seeking, as part of

the requested relief, to have the summons quashed. After a hearing, the trial court in its final decree refused to quash the summons.

Clinchfield's first assignment of error alleges that Robbins lacked the authority to hire the Sturgill firm to conduct a tax audit of Clinchfield's confidential business records. However, during oral argument, Robbins conceded that "the law in this Commonwealth is that [a commissioner of revenue] can't hire a private firm, in and of itself," to "audit a private citizen." Robbins then took the position that a commissioner of revenue has the authority to "hire an individual, as a statutory employee, from an accounting firm to do the work."

Clinchfield's second assignment of error poses the question whether a commissioner of revenue possesses the authority to employ the members of a private accounting firm as deputy commissioners to conduct confidential tax audits. This becomes the dispositive question in the case.

Robbins maintains that the authority to appoint members of a private accounting firm derives from Code §§ 15.2-408(C), -1603, and -1605(A). Code § 15.2-408(C) provides that a commissioner of revenue "may appoint such deputies, assistants and employees as he may require in the exercise of the powers conferred and in the performance of the duties imposed upon him

4

by law." Code § 15.2-1603 provides that a commissioner of revenue may "appoint one or more deputies, who may discharge any of the official duties of their principal during his continuance in office." Finally, Code § 15.2-1605(A) defines an "[e]mployee" as "an employee or deputy" of, inter alia, a commissioner of revenue.

Citing several opinions of the Attorney General, Robbins argues that "a constitutional officer maintains exclusive authority over personnel matters within his office[,] giving the officer the discretionary power to appoint deputies." See 1998 Op. Atty. Gen. 30; 1986-1987 Op. Atty. Gen. 69; 1982-1983 Op. Atty. Gen. 105. Robbins references another opinion of the Attorney General in aid of his position that a commissioner of revenue may engage "part-time employees to conduct audits." 1991 Op. Atty. Gen. 281.

Continuing, Robbins argues that when he "deputized [the] five individuals," they became part-time "statutory employees as defined by Virginia Code § 15.2-1605, which allows them to receive confidential tax information under Virginia Code § 58.1-3(A)(2) in the line of duty to perform tax audits." We disagree with Robbins.[1]

Code § 58.1-3(A) provides in pertinent part as follows:

5

> Except in accordance with a proper judicial order or as otherwise provided by law, the . . . commissioner of the revenue . . . or any other state or local tax or revenue officer or employee . . . shall not divulge any information acquired by him in the performance of his duties with respect to the transactions, property, including personal property, income or business of any person, firm or corporation. . . . Any person violating the provisions of this section shall be guilty of a Class 2 misdemeanor.

Subsection 2 excepts from the provisions of section A "[a]cts performed or words spoken or published in the line of duty under the law."

Code § 58.1-3(A) was the subject of the 1991 opinion of the Attorney General referenced above. In that instance, the Attorney General was asked two questions, (1) whether a commissioner of revenue could engage part-time employees to conduct tax audits, and (2) whether a commissioner of revenue may employ "private firms either to conduct the audits or <u>to provide personnel to work with a commissioner in conducting the audits</u>." 1991 Op. Atty. Gen. 281. (Emphasis added.) The Attorney General answered the first question by stating that "the confidentiality provisions of § 58.1-3 . . . are not violated by disseminating protected information to tax or revenue employees, including part-time employees, for the performance of their public duties." 1991 Op. Atty. Gen. at 281-82.

---

[1] Robbins argued on brief that the five individuals would be considered as employees even under the common law. However,

6

With respect to the second question, the Attorney General noted that prior opinions of her office had reached different conclusions when addressing whether a commissioner of revenue could disclose confidential tax information to third parties. The Attorney General then explained as follows:

> The different conclusions reached by these prior Opinions are based on the existence or nonexistence of the statutory authority for the third party to perform duties which require access to the tax information. If such statutory authority exists, the information is disclosed "in the line of duty under the law," as provided in § 58.1-3(A)(2). As a result, a commissioner of the revenue may disclose confidential tax information to a local tax collector employed by a county board of supervisors pursuant to the authority granted in § 58.1-3934 . . . . Likewise, a commissioner may provide confidential tax information to a local board of equalization pursuant to a statute, § 58.1-3379 . . . , requiring such boards to equalize assessments in the county and requiring local commissioners to call inequalities to the attention of the board. . . .
>
> In contrast, a commissioner of the revenue may not disclose confidential tax information to outside assessors engaged to audit taxpayers, to verify returns and to make statutory assessments for omitted items. *See* 1976-1977 Att'y Gen. Ann. Rep. 34 (the "1976 Opinion"). The function of an outside assessor would be limited to appraising property voluntarily exhibited by the taxpayer and to submitting his appraised value to the commissioner. *Id.* at 35. Based on the conclusion in the 1976 Opinion, it is my opinion that, because there is no statute that authorizes a commissioner of the revenue to engage outside auditors and thus to disclose confidential tax information pursuant to the commissioner's or the auditor's performance of his statutory duties, a commissioner is prohibited by § 58.1-3 from granting an outside auditing firm access to such information.

1991 Op. Atty. Gen. at 282 (footnote omitted) (emphasis added).

---

Robbins abandoned this position during oral argument.

7

Although the construction of a statute by the Attorney General is not binding upon this Court, it is of "persuasive character."  Barber v. City of Danville, 149 Va. 418, 424, 141 S.E. 126, 127 (1928).  We find the Attorney General's 1991 opinion most persuasive on the question whether there is statutory authority for a commissioner of revenue to engage a private accounting firm to conduct audits or to provide personnel to do the work.  And it is worthy of note that, although the opinion quoted above has been on the books since 1991, the General Assembly has not seen fit to alter it in any way.  The General Assembly "is presumed to have knowledge of the Attorney General's interpretation of statutes, and the General Assembly's failure to make corrective amendments evinces legislative acquiescence in the Attorney General's interpretation."  City of Winchester v. American Woodmark Corp., 250 Va. 451, 458, 464 S.E.2d 148, 153 (1995).

Here, as noted supra, Robbins has conceded he lacks the authority to employ a private accounting firm to perform tax audits.  He maintains, however, that Code §§ 15.2-408(C) and -1603 evince the legislative intent to allow commissioners of revenue to appoint deputies who become a commissioner's statutory employees and to whom confidential information may be divulged "in the line of duty," consonant with Code § 58.1-

8

3(A)(2).  But we cannot find the legislative intent Robbins ascribes to Code §§ 15.2-408(C) and -1603.  Indeed, given the circumstances of this case and the confidentiality provisions of Code § 58.1-3(A), we cannot perceive that the General Assembly intended to allow a commissioner of revenue to overcome the lack of authority to hire a private accounting firm by appointing the members of such a firm as deputy commissioners to conduct confidential tax audits.

The circumstances of this case are undisputed.  During oral argument, Robbins acknowledged that his "Auditing Agreement" with the Sturgill firm was "still in effect," that it "never was set aside or altered or amended in any fashion."  And, when Robbins was asked during his testimony below, "does your agreement run to [Larry Sturgill's] firm or does it run to these individuals," Robbins stated that the agreement "basically covers him or his employees."

Thus, pursuant to the agreement, the Sturgill firm and its members, in the performance of services for Robbins, "shall operate as and have the status" of independent contractors and "shall not act or be" employees of Robbins "for any purpose." The Sturgill firm's members are not entitled to workers' compensation or other benefits provided to Robbins' regular employees.  Robbins does not pay the salaries of the Sturgill firm's members.  Instead, he pays the firm an hourly rate for

audit services based upon monthly bills submitted by the firm and the firm compensates the members.[2]  When Robbins was asked below whether the five people he had named as his deputies were "full-time employees" of the Sturgill firm and "on [the firm's] payroll," he replied in the affirmative.

This case requires application of the well-known maxim that a person may not do indirectly what he cannot do directly, Phillips v. Schools, 211 Va. 19, 22-23, 175 S.E.2d 279, 281 (1970).  Accordingly, we will reverse the judgment of the trial court and enter final judgment in favor of Clinchfield declaring that Robbins lacked the authority to appoint the members of the Sturgill firm as deputy commissioners of revenue.  Our judgment will also quash the summons requiring Clinchfield to produce its business tax records for use by the members of the Sturgill firm.

Reversed and final judgment.

---

[2] Robbins testified below that he secured funds from the "Coal Road Committee" to finance his coal severance tax audits.  He said there is such a committee "in all the coalfield counties," and the committees distribute funds derived from "the coal and gas severance" tax.