PRESENT: All the Justices

DAVID BERRY, ET AL.

v. Record No. 211143

OPINION BY
JUSTICE WESLEY G. RUSSELL, JR.
MARCH 23, 2023

BOARD OF SUPERVISORS
OF FAIRFAX COUNTY

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David A. Oblon, Judge[1]

David Berry, Carol A. Hawn, Helen H. Webb, and Adrienne A. Whyte, resident

taxpayers of Fairfax County (collectively "Residents"), appeal the circuit court's decision

dismissing their claims against the Board of Supervisors of Fairfax County. In the proceedings

below, the Residents sought declaratory relief and to enjoin the Board from adopting an updated

zoning ordinance ("Z-Mod") via electronic meeting. Alternatively, if their request for

preliminary relief was denied and the Board adopted Z-Mod via electronic meeting, the

Residents sought a declaration "that any such action or approval by the [Board] concerning

Z-Mod is not permitted by Virginia law during the pandemic emergency and, hence, is void *ab

initio* and of no continuing force or effect."

The circuit court denied the requested relief, finding that the Residents' claims were

moot, that a portion of the Residents' declaratory judgment action also was unripe, and that the

Board had the authority to adopt Z-Mod in an electronic meeting. The Residents appealed to this

Court, and, for the following reasons, we reverse the judgment of the circuit court.

---

[1] Judge Oblon ultimately made the ruling sustaining the Board's demurrer and entered the dismissal order in the matter. The Honorable John M. Tran presided over the proceedings related to the Residents' request for a preliminary injunction. On appeal, the Residents only challenge the circuit court's ruling dismissing their claims.

## I. Background

In 2016, Fairfax County began a process to update and modernize its existing zoning ordinance, which had been adopted in 1978. The new ordinance was meant to replace the old zoning ordinance in its entirety. Because the project involved editorial and substantive changes which required "[e]xtensive public outreach[,]" the process continued into late 2020.

Earlier that year, the COVID-19 pandemic emerged, prompting the Governor to declare a state of emergency pursuant to Code § 44-146.17. The General Assembly likewise addressed the pandemic in its 2020 budget bills, authorizing public bodies to meet electronically to address certain matters during a state emergency. *See* 2020 Acts ch. 1283 § 4-0.01(g) (Reg. Sess.); 2020 Acts ch. 56 § 4-0.01(g) (Spec. Sess. I). In response to the pandemic, the Board adopted a continuity ordinance, pursuant to Code § 15.2-1413, establishing procedures for meeting electronically during the pandemic emergency in order to assure continuity in government by allowing the Board "to conduct necessary public business[.]"[2] The state of emergency remained in effect throughout the critical events of this case.

On January 28, 2021, Fairfax County's Planning Commission held an electronic public hearing concerning Z-Mod. On that date, the Planning Commission did not vote on whether to recommend adoption of Z-Mod to the Board but, rather, deferred its decision. Ultimately, on March 3, 2021, the Planning Commission voted to recommend that the Board adopt Z-Mod.

---

[2] The ordinance, which was attached as an exhibit to the Residents' complaint and in pleadings filed by the Board, is titled "AN UNCODIFIED ORDINANCE TO ESTABLISH METHODS TO ASSURE CONTINUITY IN FAIRFAX COUNTY GOVERNMENT AND CONDUCT OF BOARD OF SUPERVISORS MEETINGS DURING THE NOVEL CORONAVIRUS DISEASE 2019 (COVID-19) EMERGENCY, AND TO REPEAL THE EMERGENCY ORDINANCE ADOPTED ON MARCH 24, 2020, WHICH IS HEREBY REPLACED[.]" Because the ordinance is uncodified, we will cite to it as the "Continuity Ordinance" in this opinion.

Two days later, citing the open meeting provisions of the Virginia Freedom of Information Act ("VFOIA"), Code § 2.2-3700 *et seq.*, the Residents filed a "Verified Complaint for Declaratory Judgment and Temporary/Preliminary and Permanent Injunctive Relief," seeking to enjoin the Board from adopting Z-Mod at an electronic public hearing which was scheduled for March 9, 2021. The Residents alleged that the Board lacked the authority under Virginia law to consider and vote on Z-Mod in an electronic meeting,[3] and, as such, any resulting action or approval concerning Z-Mod should be declared void *ab initio*.

On the afternoon of March 9, 2021, prior to the Board's scheduled electronic meeting, the circuit court held an emergency hearing at which it denied the Residents' motion for temporary/preliminary injunction in a ruling from the bench. At the electronic meeting later that day, the Board considered the adoption of Z-Mod, deferring its ultimate decision until later in the month. The circuit court issued its written decision on March 12, 2021, reaffirming that the Board had authority under Code § 15.2-1413 and the General Assembly's budget bills to consider and adopt Z-Mod at an electronic meeting.

On March 22, 2021, the day before the Board's next-scheduled electronic meeting, the Residents filed objections to and a "Motion for Reconsideration" of the circuit court's order. The next day, the Board met electronically and voted to adopt Z-Mod. On May 4, 2021, the circuit court issued an order denying the Residents' March 22, 2021 Motion for Reconsideration.

Shortly after it adopted Z-Mod in March 2021, the Board filed a demurrer to the complaint, seeking dismissal of the Residents' complaint. The circuit court sustained the

---

[3] For purposes of this opinion, "electronic meeting" refers to a meeting "conducted through telephonic, video, electronic or other electronic communication means where the members are not physically assembled to discuss or transact public business[.]" Code § 2.2-3707(B).

Board's demurrer in a ruling from the bench and entered its final order dismissing the complaint on September 9, 2021. As for its reasoning, the order incorporated the circuit court's "reasons stated from the bench and reflected in the . . . transcripts[.]" The circuit court concluded that Residents' requests for injunctive relief had been "denied, decided, and are now moot[.]" Specifically, the circuit court had already denied the Residents' request for a preliminary injunction to prevent the Board from proceeding with the amendment process electronically. Similarly, the circuit court found the Residents' request for a permanent injunction to prevent the Board from proceeding with the amendment process electronically also was moot because the Board had already met and passed Z-Mod electronically.

The circuit court further found that the Residents' remaining request for relief—a declaration that the adoption of Z-Mod at an electronic meeting rendered it void *ab initio*—had been mooted by the Board's adoption of Z-Mod. Specifically, the circuit court found that the Residents' right to challenge the adoption of Z-Mod "had already matured" because of the Board's adoption of Z-Mod, and thus, the Residents' declaratory judgment action was no longer viable because "'where claims and rights asserted have fully matured and the alleged wrongs have already been suffered, a declaratory judgment proceeding, which is intended to permit the declaration of rights before they mature, is not an available remedy.'" (Citation omitted). The circuit court also concluded that the Residents' challenge was premature under Code § 15.2-2285(F) and had to be asserted in a suit filed after adoption of Z-Mod. In essence, the circuit court found that the claim simultaneously was both moot and unripe.

As an additional ground for its decision, the circuit court concluded that the Board had the authority to hear and act on Z-Mod by electronic means because "[z]oning is inherently an essential act of local government[,] . . . critical, especially in the context of a national emergency

4

and state emergency because civility between neighbors is the foundation of domestic tranquility." From this premise, the circuit court concluded that the various emergency power statutes relied upon by the Board allowed it to adopt Z-Mod in an electronic meeting.

The Residents noted an appeal to this Court, advancing three principal assignments of error. The first two assignments of error address the circuit court's procedural rulings, arguing that the Residents' request for a declaratory ruling that the Board lacked authority to adopt Z-Mod electronically was neither moot nor a premature appeal. The third assignment of error maintains that the Board had no legal authority to adopt Z-Mod in an electronic meeting that violated the open meeting requirements of VFOIA. We granted the Residents' petition to address these issues.

## II. Analysis

### A. Standard of review

Whether a locality has the power to act is a question of law subject to de novo review in this Court. *Dumfries-Triangle Rescue Squad, Inc. v. Bd. of Cnty. Supervisors*, 299 Va. 226, 233 (2020). Issues related to the interpretation of statutes and ordinances also are questions of law subject to de novo review. *See*, *e.g.*, *Cole v. Smyth Cnty. Bd. of Supervisors*, 298 Va. 625, 635-36 (2020) (statutory interpretation); *Alexandria City Council v. Mirant Potomac River, LLC*, 273 Va. 448, 455 (2007) (recognizing that "interpretation of a[n] . . . ordinance, like interpretation of a statute, is a pure question of law, subject to de novo review").

When interpreting a statute or ordinance, "our primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012) (internal quotation marks omitted) (quoting *Commonwealth v. Amerson*, 281 Va. 414, 418 (2011)). "[W]e determine [that] intent

from the words contained in the statute" or ordinance. *Williams v. Commonwealth*, 265 Va. 268, 271 (2003) (citing *Vaughn, Inc. v. Beck*, 262 Va. 673, 677 (2001); *Thomas v. Commonwealth*, 256 Va. 38, 41 (1998)). "[W]ords in a statute [or ordinance] are to be construed according to their ordinary meaning, given the context in which they are used." *City of Va. Beach v. Board of Supervisors*, 246 Va. 233, 236 (1993) (quoting *Grant v. Commonwealth*, 223 Va. 680, 684 (1982)).

When addressing multiple legislative enactments dealing with the same subject matter, we do not view them "as isolated fragments of law, but as a whole, or as parts of a great connected, homogeneous system, or a single and complete statutory arrangement." *Thorsen v. Richmond Soc'y for the Prevention of Cruelty to Animals*, 292 Va. 257, 266 (2016) (quoting *Prillaman v. Commonwealth*, 199 Va. 401, 405 (1957)). Thus, such enactments are "construed together" with "effect . . . given to them all" even if "they contain no reference to one another[] and were passed at different times." *Prillaman*, 199 Va. at 406 (quoting *Mitchell v. Witt,* 98 Va. 459, 461 (1900)).

B. Declaratory judgments, mootness, and ripeness

The Declaratory Judgment Act, Code § 8.01-184 et seq., represents a departure from the common law requirement that a litigant suffer actual damage before filing suit. *See Miller v. Highland Cnty.*, 274 Va. 355, 370 (2007). By its own terms, it provides "relief from the uncertainty and insecurity attendant upon controversies over legal rights, without requiring one of the parties interested so to invade the rights asserted by the other as to entitle him to maintain an ordinary action therefor." Code § 8.01-191. Although the Act "do[es] not create or change any substantive rights, or bring into being or modify any relationships, or alter the character of controversies, which are the subject of judicial power[,]" *Lafferty v. School Bd. of Fairfax Cnty.*,

6

293 Va. 354, 360-61 (2017) (quoting *Williams v. Southern Bank of Norfolk*, 203 Va. 657, 662, (1962)), it "provides 'a speedy determination of actual controversies between citizens, and [operates] to prune, as far as is consonant with right and justice, the dead wood attached to the common law rule of 'injury before action[.]'" *Morgan v. Board of Supervisors of Hanover Cnty.*, 302 Va. ___, ___ (Feb. 2, 2023) (quoting *Chick v. MacBain*, 157 Va. 60, 66 (1931)). In doing away with the requirement that a litigant suffer actual damage before filing suit, the Act does not permit a litigant to bring an action that is moot or in which the claims are so speculative that the action is not ripe for adjudication. *City of Fairfax v. Shanklin*, 205 Va. 227, 229-30 (1964).

The Residents, citing their interests as taxpayers and the requirements of VFOIA,[4] sought a declaration that the Board lacked the authority to consider, vote on, and ultimately adopt Z-Mod in an electronic meeting. In challenging the Board's authority in this regard, the Residents sought two distinct forms of relief: injunctive relief preventing the Board from considering, voting on, and adopting Z-Mod at an electronic meeting or, alternatively if the Board did adopt Z-Mod at an electronic meeting, a declaration that Z-Mod was void *ab initio*. Although it is undisputed that the Residents' complaint represented a live controversy when it was filed, the circuit court concluded that the entire declaratory judgment action was mooted by the time the Board adopted Z-Mod and that, alternatively, the second category of relief sought also was unripe. We address both rulings below.

---

[4] Code § 2.2-3713(A) provides that "[a]ny person . . . denied the rights and privileges conferred by this chapter may proceed to enforce such rights and privileges," seeking vindication by way of litigation.

1. Mootness

Article VI, Section 1 of the Constitution of Virginia vests the "judicial power of the Commonwealth" in the judicial branch. That power, however, "does not authorize [Virginia's courts] to 'issue advisory opinions on moot questions[.]'" *Godlove v. Rothstein*, 300 Va. 437, 439 (2022) (quoting *Board of Supervisors v. Ratcliff*, 298 Va. 622, 622 (2020)). An action is moot "when 'the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Id.* (quoting *Ratcliff*, 298 Va. at 622).

An action that involves a live controversy at its inception may become moot during the course of litigation. For example, changing events during litigation may make it impossible for a court to award a litigant the relief requested. A case is moot if the relief requested by a litigant can no longer be granted. *See*, *e.g.*, *Hankins v. Town of Virginia Beach,* 182 Va. 642, 644 (1944); *Hollowell v. Virginia Marine Res. Comm'n*, 56 Va. App. 70, 77-78 (2010). Regardless of how "it may have come about," a determination that a claim is moot because it is no longer possible to grant the requested relief "deprives [a court] of [its] power to act; there is nothing for [it] to remedy, even if [it] were disposed to do so." *Spencer v. Kemna*, 523 U.S. 1, 18 (1998).

The circuit court correctly found that a portion of the Residents' claimed relief had been mooted by events. At the time of the circuit court's final order, the Board had already met, voted on, and adopted Z-Mod in an electronic meeting. Accordingly, it was impossible for the circuit court to enter an injunction preventing the Board from doing so, and thus, the circuit court correctly concluded that the portions of the Residents' claims that sought to prevent such occurrences from happening were now moot. *See*, *e.g.*, *Spencer*, 523 U.S. at 18; *Hankins,* 182 Va. at 644; *Hollowell*, 56 Va. App. at 77-78.

The fact that *some* of the Residents' requested relief had been mooted by events did not render moot the Residents' suit in total. After all, the gravamen of the complaint—that the Board lacked the authority to adopt a revised zoning ordinance in an electronic meeting—remained a live question, and the Residents had requested relief—a declaration that the Board lacked such authority and that Z-Mod was void *ab initio*—that the circuit court could still award. In short, although the claims seeking to enjoin the consideration and adoption of Z-Mod were moot, the underlying claim as to the Board's authority was very much alive.

Despite this, the circuit court found that the Residents' declaratory judgment action had been mooted by the Board's adoption of Z-Mod. It reasoned that declaratory judgment actions like the one here may only be used before the "'claims and rights asserted have fully matured and the alleged wrongs have already been suffered[.]'" (Citation omitted). The circuit court reasoned that, because the Residents challenged the adoption of Z-Mod, any deficiencies in its adoption fully matured once it was adopted.

Although it is true that a declaratory judgment action may not be used to assert claims that have fully matured, *see*, *e.g.*, *Pure Presbyterian Church of Washington v. Grace of God Presbyterian Church*, 296 Va. 42, 55 (2018), the circuit court's ruling that the Residents' declaratory judgment action was mooted by the adoption of Z-Mod was error because the Residents' action was not exclusively a *pre-adoption* challenge to Z-Mod. Rather, because of the alternative relief requested in the event that the Board adopted Z-Mod, it was also a *pre-enforcement* challenge to Z-Mod, seeking to prohibit the Board from enforcing the provisions of Z-Mod or expending taxpayer funds to implement it. Accordingly, not all of the Residents' claims had fully matured.

9

It is well-established that a declaratory judgment action is a proper vehicle for a pre-enforcement challenge to the manner in which an ordinance has been adopted. *See*, *e.g.*, *Gas Mart Corp. v. Board of Supervisors*, 269 Va. 334 (2005); *Glazebrook v. Board of Supervisors*, 266 Va. 550, 557 (2003); *Town of Jonesville v. Powell Valley Vill. Ltd. P'ship*, 254 Va. 70, 74 (1997); *Board of Supervisors v. Rowe*, 216 Va. 128 (1975). The procedure is so well-established that, in its brief in this Court, the Board concedes that, regarding "a governing body's decision to adopt or amend a zoning ordinance[,]" a declaratory judgment action "is the proper vehicle for challenging that decision."[5] Accordingly, the circuit court erred in concluding that the Board's adoption of Z-Mod mooted the Residents' declaratory judgment action.[6]

## 2. Ripeness

Whereas mootness addresses a once viable claim that has lost its viability, the concept of ripeness applies to claims that, while potentially viable at some point in the future, have yet to mature into a justiciable controversy—that is, an actual controversy between the parties that is not based solely on speculation or purely hypothetical scenarios that may (or may not) occur at some undefined point in the future. Even under the less stringent injury pleading requirements of the Declaratory Judgment Act, "[t]he controversy must be one . . . where specific adverse claims, based upon present rather than future or speculative facts, are ripe for judicial adjustment."

---

[5] In making this concession, the Board argues that a declaratory judgment action is the appropriate vehicle only "*after*" the ordinance has been adopted. We address this argument below.

[6] Because the existence of the Residents' alternative claim for relief provides a sufficient basis for concluding that the circuit court erred on this question, we do not reach the question of whether a declaratory judgment action, viable at its filing, must be dismissed as moot if the claims and rights asserted fully mature, i.e., the potential injury becomes an actual injury, during the course of the litigation.

*Charlottesville Area Fitness Club Operators Ass'n v. Albemarle Cnty. Bd. of Supervisors*, 285

Va. 87, 98 (2013) (quoting *Shanklin,* 205 Va. at 229).

In the instant case, the Residents' complaint was based on much more than mere

speculation or purely hypothetical scenarios. In required public notices, the Board made it

known that it was planning to consider and adopt Z-Mod in an electronic meeting, and it did in

fact do so. The Residents' complaint that the Board lacked the authority to do so rested on the

situation as it existed and did not depend on future events unfolding in a particular way. In this

sense, the complaint was ripe because it presented the circuit court with "specific adverse claims,

based upon present rather than future or speculative facts[.]" *Id.*

Despite this, at the Board's behest, the circuit court concluded that the Residents'

declaratory judgment action needed to be dismissed because it was a "premature" appeal of the

zoning ordinance. Specifically, the circuit court concluded that Code § 15.2-2285(F) provides

the sole manner by which the Residents could challenge the Board's ultimate adoption of Z-Mod

and that the statute required the Residents to refrain from initiating such a claim until after the

Board had adopted Z-Mod. We disagree.

Code § 15.2-2285(F) provides, in part, that

> [e]very action contesting a decision of the local governing body
> adopting or failing to adopt a proposed zoning ordinance or
> amendment thereto or granting or failing to grant a special
> exception shall be filed within thirty days of the decision with the
> circuit court having jurisdiction of the land affected by the
> decision.

The most common applications of the statute have dealt with appeals of individual zoning

decisions, whether regarding an individual parcel of land or discrete provisions within a zoning

ordinance. Assuming without deciding that Code § 15.2-2285(F) applies to a challenge to the

procedures by which a locality purports to have revised its zoning ordinance in its entirety,

11

neither the plain language of the statute nor its purpose required the dismissal of the Residents'

complaint as premature.

The central premise of the Board's argument and the circuit court's conclusion that

Code § 15.2-2285(F) required the dismissal of the Residents' complaint as premature is the

assumption that the phrase "within thirty days of the decision" necessarily means "within thirty

days *after*" the decision.  Notably absent from the statute is the word "after," and, like this Court,

circuit courts are required to interpret statutes based upon "what the statute says and not by what

[the court] think[s] it should have said."  *Amerson*, 281 Va. at 421 (quoting *Virginian-Pilot*

*Media Cos. v. Dow Jones & Co.*, 280 Va. 464, 468-69 (2010)).  Accordingly, courts may not

"add[] language to or delet[e] language from a statute" in the guise of interpreting that statute.

*Appalachian Power Co. v. State Corp. Comm'n*, 284 Va. 695, 706 (2012) (citing *BBF, Inc. v.*

*Alstom Power, Inc.*, 274 Va. 326, 331 (2007)).  Absent the circuit court effectively adding "after"

to the statute, the Residents' complaint, which was filed eighteen days before the adoption of

Z-Mod, literally was filed within thirty days of the Board's decision to adopt Z-Mod as required

by the statute.[7]

A conclusion that Code § 15.2-2285(F) did not require the Residents' complaint to be

dismissed is not only consistent with the literal meaning of the statutory text, it also is consistent

with the purpose of the statute.  Previously, we have recognized that the 30-day period in

Code § 15.2-2285(F) and its predecessors is neither a statute of limitations nor a statute of

repose.  *Friends of Clark Mountain Found., Inc. v. Board of Supervisors*, 242 Va. 16, 19-20

---

[7] We note that, on at least one prior occasion, we have concluded that language requiring that a pleading be filed within a specific time "after" a specified event allowed for the pleading to be deemed timely filed if filed before the specified event.  *See*, *e.g.*, *Lackey v. Lackey*, 222 Va. 49, 50 (1981).

12

(1991). In governing challenges to zoning decisions, the statute and resulting procedures exist to "assure[] that the legislative body's decision will be reviewed in a fair, orderly, and prompt manner." *Riverview Farm Assocs. Va. Gen. P'ship v. Board of Supervisors*, 259 Va. 419, 426 (2000).

The circuit court's conclusion that Code § 15.2-2285(F) required the Residents to dismiss the existing action only to file an identical challenge (minus the previously disposed of requests for injunctive relief) the day after Z-Mod's adoption does nothing to increase or assure the fairness, orderliness, or promptness of the Residents' challenge to Z-Mod. To the contrary, such a requirement only would have resulted in both delay and disorderliness, thus producing an absurd result. Given that such a construction of the statute is not compelled by its text and is at odds with its purpose, the circuit court erred in dismissing the Residents' complaint as premature.[8] Accordingly, we turn to the merits of the Residents' challenge.

### C. VFOIA and the presumption of open government

The General Assembly adopted VFOIA, codified at Code § 2.2-3700 *et seq.*, to "ensure[] the people of the Commonwealth . . . free entry to meetings of public bodies wherein the business of the people is being conducted." Code § 2.2-3700(B). VFOIA guarantees such access because "[t]he affairs of government are not intended to be conducted in an atmosphere of secrecy since at all times the public is to be the beneficiary of any action taken at any level of government." *Id.* Absent proper invocation of a statutory exception, "every meeting shall be open to the public" and "[a]ll public records and meetings shall be presumed open[.]" *Id.*

---

[8] Our conclusion is tied to the specific challenge raised by the Residents to the Board's power to adopt the ordinance at all. There may be other circumstances, such as when the actual content of a proposed ordinance is challenged, in which filing suit before the ordinance is enacted might be premature.

13

Here there is no dispute that the Board is a "public body" for the purposes of VFOIA and that the occasions when the Board first considered and then ultimately adopted Z-Mod were "meetings" for the purpose of VFOIA. As such, those meetings were subject to VFOIA's open meeting requirements set forth in Code § 2.2-3707.

Code § 2.2-3707(A) provides that "[a]ll meetings of public bodies shall be open, except as provided in §§ 2.2-3707.01 and 2.2-3711."[9] Code § 2.2-3707(B), as it existed at the time the Residents filed suit and the Board conducted the meetings in question,[10] provided that "[n]o meeting shall be conducted through telephonic, video, electronic or other electronic communication means where the members are not physically assembled to discuss or transact public business, except as provided in § 2.2-3708.2[.]"

Code § 2.2-3708.2 articulates various circumstances in which a public body may hold a meeting by electronic means. As pertinent to the issues raised in this appeal, the applicable version of Code § 2.2-3708.2(A)(3) provided, in part, that

> [a]ny public body may meet by electronic communication means without a quorum of the public body physically assembled at one location when the Governor has declared a state of emergency in accordance with § 44-146.17, provided that (i) the catastrophic nature of the declared emergency makes it impracticable or unsafe to assemble a quorum in a single location and (ii) *the purpose of the meeting is to address the emergency*.

---

[9] Neither Code § 2.2-3701.01 nor Code § 2.2-3711 have any application to the meetings of the Board at issue in this appeal.

[10] In both 2021 and 2022, the General Assembly amended various provisions of VFOIA, including both Code §§ 2.2-3707 and 2.2-3708.2. None of those amendments became effective prior to the Board's adoption of Z-Mod. Accordingly, we apply the version of VFOIA in effect at the time of the Board's consideration and adoption of Z-Mod and only reference the amendments to the extent that the later actions of the General Assembly may shed light on the meaning of the version of statutes that were in effect when the Board adopted Z-Mod. *See Prillaman*, 199 Va. at 406.

(Emphasis added.)

It is undisputed that the Board's consideration and ultimate adoption of Z-Mod was not undertaken to address the COVID-19 emergency. After all, the process of revising the existing zoning ordinance that culminated in Z-Mod began in *2016*, well before the existence, let alone the effect, of COVID-19 was known. Accordingly, unless some other provision of law supplanted VFOIA's requirements, the meetings at which Z-Mod was considered and ultimately adopted could not be conducted by electronic means.

### D. Emergency powers legislation

The Board contends that multiple legislative enactments granted it emergency powers during the COVID-19 state of emergency that allowed it to dispense with VFOIA's open meeting requirements and conduct the meetings during which Z-Mod was considered and adopted by electronic means. Specifically, the Board contends (and the circuit court agreed) that both Code § 15.2-1413 and the County's adoption of the Continuity Ordinance as well as authority granted in the budget bills adopted by the General Assembly in 2020 allowed it to dispense with VFOIA's requirement that the meetings regarding Z-Mod be in-person. We address each argument in turn.

### 1. Code § 15.2-1413 and the Continuity Ordinance

Code § 15.2-1413, as it existed at the relevant time, provided that

> [n]otwithstanding any contrary provision of law, general or special, any locality may, by ordinance, provide a method to assure continuity in its government, in the event of an enemy attack or other disaster. Such ordinance shall be limited in its effect to a period not exceeding six months after any such attack or disaster and shall provide for a method for the resumption of normal governmental authority by the end of the six-month period.[11]

---

[11] In 2021, the General Assembly amended Code § 15.2-1413 to extend the period of time a continuity ordinance could remain in effect from six months to twelve months. *See* 2021

15

The Board contends that this language overrode the in-person meeting requirement of Code § 2.2-3707 and allowed the Board, if it had adopted a continuity ordinance, to consider and adopt Z-Mod by means of an electronic meeting.

In asserting that Code § 15.2-1413 supersedes VFOIA's in-person meeting requirement, the Board correctly notes that, by its express terms, the statute is to be given effect "[n]otwithstanding any contrary provision of law, general or special[.]" In this context, the plain and ordinary meaning of "notwithstanding" certainly suggests such a conclusion. *See*, *e.g.*, Webster's Third New International Dictionary 1545 (2002) (defining "notwithstanding" to mean "without prevention or obstruction from or by: in spite of"); Black's Law Dictionary 1281 (11th ed. 2019) (defining "notwithstanding" to mean "[d]espite; "in spite of"). In addressing similar statutory provisions, the Court of Appeals has concluded that language providing that a statute controls "notwithstanding" other statutes "indicates the General Assembly intended that the statute 'function without obstruction from' 'other incongruous laws.'" *Holloway v. Commonwealth*, 72 Va. App. 370, 377 (2020) (some internal quotation marks omitted) (quoting *Green v. Commonwealth*, 28 Va. App. 567, 570 (1998)). Applying this reasoning here, Code § 15.2-1413 trumps the open meeting provisions of VFOIA, but only if and to the extent that Code § 15.2-1413 conflicts with those provisions.

The text of Code § 15.2-1413 does not, in and of itself, create such a conflict. In providing only that "any locality *may*, by ordinance, provide a method to assure continuity in its government, in the event of an enemy attack or other disaster[,]" Code § 15.2-1413 (emphasis added), the statute merely grants localities the discretion to adopt such an ordinance. *See*

Acts ch. 295 (Spec. Sess. I). The amendment became effective July 1, 2021, and thus, has no application to the Board's consideration and adoption of Z-Mod in March 2021.

16

*Masters v. Hart*, 189 Va. 969, 979 (1949) ("Unless it is manifest that the purpose of the legislature was to use the word 'may' in the sense of 'shall' or 'must,' then 'may' should be given its ordinary meaning—permission, importing discretion."). Code § 15.2-1413 does not specify the content of any such ordinance and, given that the statute only grants localities discretion to adopt an ordinance, it does not require that a locality adopt any such ordinance at all. *See Wal-Mart Stores E., LP v. State Corp. Comm'n*, 299 Va. 57, 70 (2020) (recognizing that the General Assembly's use of "'[m]ay' presupposes that [the body granted discretion] also 'may not'"). Accordingly, the question becomes whether a locality has adopted an ordinance pursuant to Code § 15.2-1413 and whether that ordinance conflicts with VFOIA.

To be sure, Code § 15.2-1413 sets some outer limits on the ordinance a locality is empowered to enact. The ordinance must be enacted in response to "an enemy attack or other disaster[,]" may remain in place for a specified duration, and, of particular importance to this case, must be limited to "provid[ing] a method to assure continuity in its government" and nothing more. Code § 15.2-1413.

The parties have argued extensively about what the phrase "assure continuity in its government" means and the outer limit of what a locality may do in an ordinance adopted pursuant to Code § 15.2-1413. Citing an opinion of the attorney general[12] and the context of the statute authorizing action only "in the event of an enemy attack or other disaster[,]" the Residents argue that Code § 15.2-1413 allows local government to take steps to continue "governmental activities that are critical to the continued survival and function of government," but not ordinary business, such as the wholesale revision and modification of a 40-year-old zoning ordinance.

---

[12] 2020 Op. Atty. Gen. 8-17. "Although the construction of a statute by the Attorney General is not binding upon this Court, it is of 'persuasive character.'" *Clinchfield Coal Co. v. Robbins*, 261 Va. 12, 18 (2001) (quoting *Barber v. City of Danville,* 149 Va. 418, 424 (1928)).

The Board argues that the interpretation championed by the Residents and the attorney general is "too narrow," and effectively asserts that the statute empowers the Board to conduct any of its ordinary business under the emergency procedures it adopts in the ordinance without regard to the requirements imposed by VFOIA.

We need not, however, answer the broad, abstract question of the outer limits of the implied authority granted to localities by Code § 15.2-1413 to resolve this portion of the appeal; rather, this portion of the appeal can be resolved by focusing on the much narrower question of whether the specific ordinance adopted by the Board authorized the Board to consider and adopt Z-Mod at electronic meetings.[13]  For the reasons stated below and assuming that the Continuity Ordinance falls within the grant of authority provided by Code § 15.2-1413, we conclude that it did not authorize the Board to consider and adopt Z-Mod at meetings conducted by electronic means.

The Board adopted the Continuity Ordinance in 2020 "to establish[] methods to assure continuity in Fairfax County government, including Board of Supervisors' procedures for meetings, during the COVID-19 emergency[.]"  Continuity Ordinance, § 1(A).  Of note given the Board's arguments on appeal, the Continuity Ordinance does not purport to allow the Board to conduct all of its business without complying with VFOIA.  Section 1(D)(1) of the Continuity Ordinance provides that "[f]or any meeting at which the Board . . . transacts public business with any purpose other than addressing the emergency or assuring continuity in Fairfax County government, the Board . . . will meet in accordance with all usual procedures established by the

_____

[13] "As we have often said, '[t]he doctrine of judicial restraint dictates that we decide cases on the best and narrowest grounds available.'"  *Commonwealth v. White*, 293 Va. 411, 419 (2017) (some internal quotation marks and footnote omitted) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015)).

18

Virginia Freedom of Information Act." Accordingly, even if we were to assume that

Code § 15.2-1413 allows a locality to decide to conduct all of its business by electronic meetings

during an emergency, the Board did not do so when it adopted the Continuity Ordinance.

Tellingly, even for matters falling within the scope of the emergency provisions of the

Continuity Ordinance, the Board emphasized a desire to comply with VFOIA. Section 1(D)(2)

of the Continuity Ordinance provides that even when "the purpose of a meeting of the Board . . .

is to address the emergency, the Board . . . will meet in accordance with" VFOIA. Similarly,

Section 1(D)(3) of the Continuity Ordinance provides that if a Board meeting "is being

conducted [to] assur[e] continuity in Fairfax County government," the meeting shall be

conducted "in accordance with all usual procedures established by the Virginia Freedom of

Information Act to the extent possible." Regarding continuity in government matters, the

Continuity Ordinance only permits the Board to meet without complying with VFOIA, if the

"items proposed to be considered are necessary to assure continuity in Fairfax County

government and the usual procedures cannot be implemented safely or practically[.]"[14]

Continuity Ordinance, § 1(D)(3)(B).

It is undisputed that the Board did not consider and adopt Z-Mod to address the

COVID-19 emergency. Rather, the Board contends that, consistent with the Continuity

Ordinance, the consideration and adoption of Z-Mod was necessary to assure continuity in

government. Accordingly, we turn to the Continuity Ordinance's definition of continuity in

government.

---

[14] "Usual procedures" is defined in the Continuity Ordinance to mean "the requirements and procedures established by [VFOIA] for public meetings, including remote participation by a Board member as long as a quorum of the Board is physically assembled at the meeting location, as allowed by Virginia Code § 2.2-3708.2(A)(1)[.]" Continuity Ordinance, § 1(C).

Section 1(C) of the Continuity Ordinance defines "[c]ontinuity in Fairfax County government" as including

> without limitation, those actions, and the coordination of actions, that are *necessary to assure the continuation of the County's essential functions and services*. By way of example and not limitation, such necessary actions include those related to (1) the County's finances, such as the public hearings and adoption of the FY 2021 budget, tax rate, and utilities fees; appropriations of funds; and funding requests; (2) contracts that need Board action; (3) applications, appeals, or other requests that are subject to mandatory or directory time frames for action; (4) satisfying due process and other constitutional requirements; (5) public safety; and (6) measures that help sustain the County's economy.

(Emphasis added.)

Although this illustrative list is intended to be non-exhaustive, it is clear that the consideration and adoption of Z-Mod after a revision process that began literally years before the COVID-19 emergency is different in kind from the listed examples, and thus, falls outside of the Continuity Ordinance's definition of "continuity in . . . government[.]" For each of the listed examples, there is, at the very least, an implied temporal element. Questions regarding the County's budget, entering into and renewing contracts, and meeting statutory deadlines for government action are all time-sensitive with a failure to meet such deadlines either imperiling the continued existence of the government or having the potential to cause the County to forever forego acting on a particular topic. Similarly, taking steps to satisfy due process or other constitutional requirements, protect public safety, and sustain the County's economy from collapse are things that require *immediate* attention. If an issue does not require immediate attention, it cannot fairly be classified as "necessary" to allow the County government to continue with essential functions and services.

20

Although the language of the Continuity Ordinance amply supports such an interpretation, we note that the context of the ordinance further supports such a view. *See Potter v. BFK, Inc.*, 300 Va. 177, 182 (2021) (recognizing that "[a]lthough our focus is generally on the plain meaning of unambiguous [legislative] language, we must also consider that language in the context in which it is used"). After all, by its own terms, the Continuity Ordinance is designed to allow Fairfax County to continue to function in the face of the COVID-19 emergency. To the extent it authorizes a departure from normal procedures, including the open meeting requirements of VFOIA, it does so only to allow the Board to take the steps "necessary" to perpetuate the locality's operations – not to conduct any and all business that the Board otherwise may be empowered to undertake. In short, the Board enacted emergency procedures to deal with exigent business when an emergency made following normal procedures impossible or nearly so. Nothing about that context suggests that the Continuity Ordinance should shield all of the Board's ordinary, non-time-sensitive business from VFOIA's requirement of open government.

The process that led to the ultimate adoption of Z-Mod demonstrates that its adoption was far from time-sensitive. After all, the revision process began in 2016—five years before Z-Mod was adopted and three years before the existence of COVID-19 publicly was known anywhere in the world. This multi-year history of consideration and revision before adoption conclusively demonstrates that there were not hard and fast deadlines, statutorily required or otherwise, that needed to be met. Prior to the Z-Mod revision, the zoning ordinance had existed for four decades and absolutely nothing suggests that Z-Mod needed to be adopted to satisfy due process or other constitutional requirements, protect public safety, or sustain the County's economy. Everything about the history of Z-Mod suggests that the adoption of Z-Mod could have waited

days, weeks, or months without throwing the County's operations into even minor distress let alone chaos. Simply put, the consideration and adoption of Z-Mod was not time-sensitive, and thus, acting on it in March 2021 was neither essential nor necessary to allow for the continued operations of Fairfax County government.

Despite the fact that the consideration and adoption of Z-Mod was not time-sensitive, the Board argues that it still fell within the Continuity Ordinance's definition of "[c]ontinuity in Fairfax County government" because zoning represents "an essential local government function[.]" As the Board notes, we previously have stated that "a local government's exercise of its zoning authority is 'one of the most essential powers of government[.]'" *Board of Supervisors v. Board of Zoning Appeals*, 268 Va. 441, 446 (2004) (quoting *Hadacheck v. Sebastian,* 239 U.S. 394, 410 (1915)). Although both the Continuity Ordinance and our decision in *Board of Supervisors* utilize the word "essential," context makes clear that the word was not intended to convey the same meaning on each occasion.

In our prior decision, we addressed whether a county board of supervisors had standing to challenge a decision of the county's board of zoning appeals. *Id.* at 445. The question was whether the final word in zoning matters lay with the board of supervisors or the board of zoning appeals. Citing *Hadacheck*, the United States Supreme Court's 1915 decision characterizing zoning as an "essential" power of local government, we concluded that the board of supervisors, as the final repository of a county's powers, had standing to bring the suit. *Id.* at 446. In contrast to its use in the Continuity Ordinance, we used the term "essential" to convey that the zoning power *in general* belongs to the locality (and hence the board of supervisors) not whether a *particular* action regarding zoning must be performed quickly or at all. Thus, the fact that the

22

zoning power is an essential power of local government does not compel the conclusion that any particular zoning decision is essential.[15]

Because there is no dispute in this case that zoning decisions belong to the Board, our decision in *Board of Supervisors*, including the use of the word "essential," sheds little light on the issue in this case and does not alter our interpretation of the meaning of "essential" in the Continuity Ordinance.

For the foregoing reasons, the Continuity Ordinance did not authorize the Board to consider and adopt Z-Mod in an electronic meeting. Accordingly, neither the Continuity Ordinance nor Code § 15.2-1413 conflicted with or superseded VFOIA's open meeting requirements.

## 2. Budget language

The Board also contends that, in enacting the budget in 2020, the General Assembly supplanted VFOIA's open meeting requirements and authorized it to consider and adopt Z-Mod at meetings conducted by electronic means. *See* 2020 Acts ch. 1283 § 4-0.01(g) (Reg. Sess.); 2020 Acts ch. 56 § 4-0.01(g) (Spec. Sess. I) ("budget language"). In pertinent part, the referenced budget language reads:

> Notwithstanding any other provision of law, any public body, including any state, local, regional, or regulatory body, or a governing board as defined in § 54.1-2345 of the Code of Virginia, or any joint meeting of such entities, may meet by electronic communication means without a quorum of the public body or any member of the governing board physically assembled at one location when the Governor has declared a state of emergency in accordance with § 44-146.17, provided that (i) the nature of the

---

[15] We acknowledge that there are specific zoning/land use matters where a locality must act within a statutorily defined deadline or lose the ability to act at all. *See*, *e.g.*, Code §§ 15.2-2245(B), 15.2-2316.4(B)(1),15.2-2316.4:1(D), and 15.2-2259(A)(3). Given that time is of the essence in such matters, action by the locality might fairly be characterized as "essential"; however, we do not decide that issue because that is not the case before us.

declared emergency makes it impracticable or unsafe for the public body or governing board to assemble in a single location; (ii) the purpose of meeting is to discuss or transact the business statutorily required or necessary to continue operations of the public body or common interest community association as defined in § 54.1-2345 of the Code of Virginia and the discharge of its lawful purposes, duties, and responsibilities; (iii) a public body shall make available a recording or transcript of the meeting on its website in accordance with the timeframes established in §§ 2.2-3707 and 2.2-3707.1 of the Code of Virginia; and (iv) the governing board shall distribute minutes of a meeting held pursuant to this subdivision to common interest community association members by the same method used to provide notice of the meeting.

*Id*. The Board contends that the budget language overrides the open meeting requirements of VFOIA and permitted the Board to consider and adopt Z-Mod in meetings conducted by electronic means.

Much as it did regarding Code § 15.2-1413, the Board argues that the budget language superseded VFOIA because of its introductory phrase, "[n]otwithstanding any other provision of law[.]" *Id.* For the same reasons we stated regarding Code § 15.2-1413, we agree that this language overrides the open meeting provisions of VFOIA, *but only to the extent that the provisions are in conflict*. *See Holloway*, 72 Va. App. at 377. As pertinent to this appeal, such a conflict arises only if the budget language authorized the Board to consider and adopt Z-Mod at meetings conducted by electronic means.

The budget language authorized public bodies such as the Board to "meet by electronic communication means without a quorum of the public body or any member of the governing board physically assembled at one location when the Governor has declared a state of emergency in accordance with § 44-146.17" and certain other conditions, set out in romanettes (i) - (iv), are met. 2020 Acts ch. 1283 § 4-0.01(g) (Reg. Sess.); 2020 Acts ch. 56 § 4-0.01(g) (Spec. Sess. I). The Residents do not contest that the Governor had declared the requisite emergency or that the

24

conditions in romanettes (i), (iii), and (iv) were satisfied. They argue only that the consideration and adoption of Z-Mod did not satisfy the condition set forth in romanette (ii), that "the purpose of meeting[s where Z-Mod was considered and adopted wa]s to discuss or transact the business statutorily required or necessary to continue operations of the public body . . . and the discharge of its lawful purposes, duties, and responsibilities[.]" *Id.*

Specifically, the Residents argue that the revision of a 40-year-old zoning ordinance after a multi-year process is not "business statutorily required or necessary to continue operations of the public body[.]" *Id.* Although not contending that the revision of Z-Mod was "statutorily required[,]" the Board asserts that the phrase "necessary to continue operations of the public body" not only allowed the Board to adopt Z-Mod in a meeting conducted by electronic means, but exempted all of the Board's business from VFOIA's open meeting requirements.[16]

We disagree with the Board. As pertinent here, romanette (ii) exempts certain Board business from VFOIA's open meeting requirements if *two* distinct conditions are met. The business must be "necessary to continue operations of the [Board] . . . *and* [represent] the discharge of its lawful purposes, duties, and responsibilities" *Id.* (emphasis added). Because the two conditions are separated by the conjunctive "and," both conditions had to be met for the Board to avoid the open meeting requirements of VFOIA in its consideration and adoption of Z-Mod. *See*, *e.g., Varga v. Commonwealth*, 260 Va. 547, 551 (2000) (holding that "by use of the conjunctive 'and,' the statute is clear that *both*" of the conditions separated by the conjunction must be met to satisfy the statutory requirement).

_____

[16] At oral argument in this Court, the Board confirmed that its position was that the budget language exempted all Board business from the open meeting requirements of VFOIA.

25

The Board's proffered interpretation effectively combines the two distinct conditions into one, identical condition—that the business considered be part of the Board's otherwise lawful business. By arguing that the first condition allows the Board to undertake any lawful Board business, the Board would effectively read the second condition out of the statute.

Our task in statutory interpretation is "to give reasonable effect to every word" in a statute, *Jones v. Conwell*, 227 Va. 176, 181 (1984), and "we will not read a legislative enactment in a manner that renders any portion of that enactment useless." *Antisdel v. Ashby*, 279 Va. 42, 48 (2010). Because the Board's proffered interpretation does just that, we cannot adopt it.

Giving effect to both of the conditions found in romanette (ii), it becomes clear that the budget language does not exempt all Board business from VFOIA's open meeting requirements. The second condition limits the exemption from VFOIA's open meeting requirements to "the discharge of [the Board's] lawful purposes, duties, and responsibilities[,]" which we interpret as encompassing the entire universe of activity that the Board is otherwise legally allowed to undertake.[17] Thus, to give effect to both conditions, the first condition must limit the exemption to some subset of the Board's lawful business.

In determining what that subset is, we turn, once again, to context. *Potter*, 300 Va. at 182. As the Board conceded at oral argument, the General Assembly adopted the budget language as a "specific response to COVID and the pandemic." Agreeing that the budget language was a response to the COVID emergency, we interpret the phrase "necessary to

---

[17] Given the context of the emergency, this is not simply a restatement that the Board may only do the things that a board may do. It makes clear that any emergency powers granted by the budget language address *how* the Board may exercise its existing legal authority and does not expand the universe of *what* the Board may do.

26

continue operations of the" Board, 2020 Acts ch. 1283 § 4-0.01(g) (Reg. Sess.); 2020 Acts ch. 56 § 4-0.01(g) (Spec. Sess. I), in that light.

Given the similarity in language and the shared context of the COVID-19 emergency, it is unsurprising that we conclude that the use of "necessary to continue operations" in the budget language conveys a meaning similar to the phrase "necessary to assure the continuation of the County's essential functions and services" that appears in section 1(C) of the Continuity Ordinance. In context, these similar phrases refer to time-sensitive matters that the Board must undertake to perpetuate the County's operations. Thus, the phrase "necessary to continue operations" in the budget language does not encompass all that the Board may lawfully do, and thus, the budget language cannot be construed as a wholesale license to ignore VFOIA's open meeting requirements in conducting any and all business that the Board might wish to conduct.

As noted above, the modification of a 40-year-old zoning ordinance after a five-year revision process does not satisfy this standard. It is not a time-sensitive matter, and its adoption is not and was not necessary to allow the County to continue operations. Accordingly, neither Code § 15.2-1413, nor the Continuity Ordinance, nor the budget language authorized the Board to consider and adopt Z-Mod in meetings conducted "by electronic communication means without a quorum of the public body or any member of the governing board physically assembled at one location[.]"[18] 2020 Acts ch. 1283 § 4-0.01(g) (Reg. Sess.); 2020 Acts ch. 56

---

[18] To the extent that there may be overlap in the circumstances when a continuity ordinance adopted under Code § 15.2-1413 and the budget language would allow a locality to dispense with the public meeting requirements, the budget language is not a mere redundancy. First, Code § 15.2-1413 applies only to a "locality" while the budget language applies to any "state, local, regional, or regulatory body, or a governing board as defined in § 54.1-2345 of the Code of Virginia[.]" 2020 Acts ch. 1283 § 4-0.01(g) (Reg. Sess.); 2020 Acts ch. 56 § 4-0.01(g) (Spec. Sess. I). Second, any such authority granted by Code § 15.2-1413 to a locality only applies if the locality adopts a continuity ordinance pursuant to the statute. The budget language applies whether or not the locality has adopted a continuity ordinance.

§ 4-0.01(g) (Spec. Sess. I). Accordingly, the circuit court erred in concluding that the Board was authorized to do so, and thus, erred in dismissing the Residents' complaint.[19]

### E. Remedy

Having concluded that the Board adopted Z-Mod in a manner that violated the open meeting provisions of VFOIA, we turn to the question of remedy. The Residents argue that, because "Z-Mod could not be adopted through an electronic meeting[,]" the Board's purported adoption of Z-Mod was and remains "void *ab initio*[.]" We agree.

By failing to hold the meetings at which Z-Mod was considered and ultimately adopted in compliance with VFOIA's open meeting requirements, the Board's actions prevented the public from participating in the manner required by VFOIA, and thus, potentially limited public participation and input into the process. As such, the Board's failure here is analogous to the circumstances in our prior cases in which a zoning ordinance was adopted despite the failure of

---

[19] We note that in the 2021 session, the General Assembly changed the open meeting requirements of VFOIA related to public meetings in an emergency by amending Code § 2.2-3708.2(A)(3). The revised version, which became effective after the Board adopted Z-Mod, allows a board of supervisors to conduct meetings "by electronic communication means without a quorum of the public body physically assembled at one location" during declared emergencies. The 2021 amendment removed VFOIA's requirement that such meeting be "for the purpose of addressing the emergency" and allows such meetings if the purpose is either to "provide for the continuity of operations of the public body *or* the discharge of its lawful purposes, duties, and responsibilities." 2021 Acts ch. 490 (Spec. Sess. I) (emphasis added). The Residents concede that, if the 2021 amendment had been effective when the Board adopted Z-Mod, the removal of the requirement that the meeting address the emergency and the separation of the two other requirements by the disjunctive "or" as opposed to the conjunctive "and" would have permitted the Board to adopt Z-Mod in the manner it did. Although the Board continues to maintain that the budget language fully authorized its actions, it conceded at oral argument in this Court that, compared to the budget language, the language of the amended Code § 2.2-3708.2(A)(3) is "somewhat broader if read literally." The fact that the General Assembly utilized "broader" language in its 2021 amendment to VFOIA is an indication that the General Assembly intended the VFOIA amendment to reach more situations than the budget language. This further supports our conclusion that the budget language did not authorize the Board to conduct all of its business in electronic meetings. *See Prillaman*, 199 Va. at 406.

the locality to provide the statutorily required public notice.  In such cases, we have held that such ordinances are void *ab initio*.  *See*, *e.g.*, *Glazebrook*, 266 Va. at 557 (holding that certain "zoning ordinances passed pursuant to [defective] notices . . . are void *ab initio*"); *Powell Valley Vill. Ltd. P'ship*, 254 Va. at 74 (recognizing that a "[f]ailure to abide by the statutory prescriptions for the adoption of an ordinance renders the ordinance void *ab initio*"); *City Council of City of Alexandria v. Potomac Greens Assocs. P'ship*, 245 Va. 371, 378 (1993) (stating that, because the city "failed to give the requisite notices . . . , the TMP Ordinance is void *ab initio*").  Accordingly, we conclude that the Board's failure to comply with VFOIA's open meeting requirements renders Z-Mod void *ab initio*.[20]

## III.  Conclusion

For the foregoing reasons, VFOIA's open meeting requirements applied to meetings at which the Board considered and ultimately adopted Z-Mod, and thus, the circuit court erred in dismissing the Residents' complaint.  Accordingly, we reverse the judgment of the circuit court and enter final judgment for the Residents, declaring Z-Mod void *ab initio*.

*Reversed and final judgment*.

---

[20] Although maintaining that the manner in which it adopted Z-Mod was authorized, the Board, with commendable candor, conceded during oral argument in this Court that, if the Board was not authorized to adopt Z-Mod in a meeting by electronic means, the Residents "certainly" were entitled to relief.