COURT OF APPEALS OF VIRGINIA

Present:   Judges Russell, Malveaux and Senior Judge Clements
Argued at Richmond, Virginia

PUBLISHED

RYAN MATZUK, S/K/A
 WALTER RYAN MATZUK

v.      Record No. 1635-18-2

CHRISTINA PRICE AND
 RYAN BEDELL

OPINION BY
JUDGE MARY BENNETT MALVEAUX
JUNE 11, 2019

FROM THE CIRCUIT COURT OF HENRICO COUNTY
Richard S. Wallerstein, Jr., Judge

Misty D. Whitehead (Whitehead & Graves, PLLC, on brief), for appellant.

Taylor B. Stone (Brice E. Lambert, Guardian *ad litem* for the minor child; Janus & Stone, P.C.; Lambert & Associates, on brief), for appellee Christina Price.

Michael P. Tittermary (Brice E. Lambert, Guardian *ad litem* for the minor child; The Witmeyer Law Firm, PLC; Lambert & Associates, on brief), for appellee Ryan Bedell.

Walter Ryan Matzuk appeals a final order of the circuit court granting Christina Price's petition to disestablish his paternity and her petition to establish the paternity of Ryan Bedell. Matzuk argues that the circuit court erred in finding that a material mistake of fact existed with regard to paternity. For the following reasons, we affirm.

I.  BACKGROUND

Price's son, W.M., was born in April 2012.  According to the parties' pleadings, upon the child's birth, Matzuk signed an acknowledgement of paternity in which he affirmed, under oath, that he was the "natural parent of the child."[1]

In 2017, five years after the child's birth, Price filed two petitions related to the paternity of W.M.  On April 3, 2017, Price filed a petition to establish paternity for her son, W.M.  The petition alleged that Price "reasonably believe[d]" that W.M. "may be the biological product of a union" between herself and Bedell and that Matzuk's endorsement of the acknowledgement of paternity was an intentional misrepresentation of a material fact under Code § 20-49.1.[2]  On September 6, 2017, Price filed a petition to disestablish paternity.  The petition moved the circuit court to order genetic testing pursuant to Code § 20-49.3 and Code § 20-49.10.[3]  Price specifically asked the court to order genetic testing of herself, Matzuk, Bedell, and W.M., to

---

[1] A copy of the acknowledgment of paternity was not included as part of the record in this case.

[2] Code § 20-49.1, titled "How parent and child relationship established," provides several ways to establish a legal parent-child relationship between a man and a child.  One of the methods to establish parentage, as discussed in more detail *infra*, is by a voluntary acknowledgment of paternity which is "binding and conclusive" on the man acknowledging paternity, "unless, in a subsequent judicial proceeding, the person challenging the statement establishes that the statement resulted from fraud, duress or a material mistake of fact."  Code § 20-49.1(B)(2).

[3] Code § 20-49.3(A), titled "Admission of genetic tests," authorizes a court to order the alleged parents and the child to submit to "scientifically reliable genetic tests" in "the trial of any matter . . . in which the question of parentage arises."
Code § 20-49.10, titled "Relief from legal determination of paternity," establishes a mechanism for individuals to obtain relief from a legal determination of paternity.  The statute provides that a court "may set aside a . . . legal determination of paternity if a scientifically reliable genetic test performed in accordance with [Chapter 3.1 of Title 20 of the Code] establishes the exclusion of the individual named as a father in the legal determination."  However, the court is not permitted to do so if "the individual named as father . . . acknowledged paternity knowing he was not the father."  Code § 20-49.10.

"disestablish paternity of Matzuk, establish the paternity of Bedell, and enter an [o]rder of [p]arentage."

The court ordered that Price, Matzuk, Bedell, and W.M. submit to genetic testing.[4] The results, filed with the court on December 13, 2017, established that Bedell could not be excluded as the biological father of W.M.[5]

On May 29, 2018, at a hearing held on Price's petitions, Price testified that when W.M. was born, she was not aware of the identity of W.M.'s biological father. At that time, she thought that the biological father could have been either Matzuk or Bedell. Prior to W.M.'s birth, Price had told Matzuk that either he or Bedell was W.M.'s biological father. She did not know for certain that Matzuk was not W.M.'s biological father until a genetic test was completed in March 2015. She testified that Matzuk had not wanted to undergo genetic testing regarding W.M.'s paternity.

Matzuk initially testified that when he signed the birth certificate at the hospital following W.M.'s birth, he was aware that he was not W.M.'s biological father. However, he did acknowledge at the hearing that he had previously testified under oath that when Price informed him that she was pregnant, she had told him that W.M.'s biological father could be either himself or Bedell. He testified that at the time he signed the birth certificate, he "felt that [W.M.] was not mine." When asked if he "felt that, but . . . didn't know that," Matszuk replied, "I don't think that anybody knew that." He then testified that, when he signed the birth certificate, he "knew it in my heart that this was not my child." He acknowledged that he did not "do any kind of scientific research at that moment to find out if [W.M.] was [his] child or not [his] child."

---

[4] Matzuk never completed the genetic testing ordered by the court.

[5] A certificate of analysis showing the results of the genetic testing revealed that Bedell's "relative chance of [p]aternity" of W.M. was 99.9999%.

At the hearing, counsel for Price and Bedell argued that the petition to disestablish paternity should be granted because the voluntary acknowledgment of paternity was the result of a material mistake of fact under Code § 20-49.1. Counsel for Matzuk contended that appellees had not established that a material mistake of fact had existed at the time of the acknowledgment of paternity.

On August 13, 2018, the circuit court held another hearing on the matter. The court asked counsel for Matzuk whether denying the petition to disestablish paternity "[w]ould . . . be tantamount to eliminating Mr. Bedell's parental rights?," and counsel replied in the negative. The court then asked if Bedell would have "those rights, under Troxel [v. Granville, 530 U.S. 57 (2000),] and the line of cases, if he has not been legally determined to be the biological father?," to which counsel for Matzuk replied, "Yes." Counsel for Bedell then argued that denying the petition to disestablish paternity would be tantamount to eliminating his client's rights because Bedell would not be listed on the child's birth certificate and because this determination would affect his custody rights.

In addition, counsel for Bedell argued that the petition to disestablish Matzuk's paternity should also be granted under Code § 20-49.10. He contended that genetic testing had established that Bedell was W.M.'s biological father and that Code § 20-49.10 "controls" and "stands independent" of Code § 20-49.1.

After hearing argument, the circuit court made several findings. First, it concluded that an unpublished opinion of this Court, Wooddell v. Lagerquist, No. 2121-11-3 (Va. Ct. App. Nov. 20, 2012), indicated that the two paternity statutes at issue, Code §§ 20-49.1 and -49.10, "should be read with the idea in mind that they should be and could be harmonized." In regard to Code § 20-49.10, the court found that the genetic testing filed with the court was a scientifically reliable genetic test that established the exclusion of Matzuk, the individual named as a father in

- 4 -

a legal determination, as W.M.'s biological father. In regard to Code § 20-49.1, the court found, "applying the facts as the [c]ourt has heard them . . . with regard to the weight of the evidence and the credibility of the witnesses that there has been a material mistake of fact with regard to the issue of paternity." In addition, the court found that denying Price's petition to disestablish paternity "would be tantamount to preventing Mr. Bedell from being determined to be the father and have the effect of terminating Mr. Bedell's parental rights."

Based upon these findings, the court granted Price's petition to disestablish paternity, after noting that Code §§ 20-49.1 and -49.10, "when read in harmony with one another, coupled with Mr. Bedell's constitutional right with regard to his parental rights, require the disestablishment." The court also granted Price's petition to establish the paternity of Bedell as the biological father of W.M.

A final order reflecting these determinations was entered by the court on September 17, 2018. This appeal followed.

## II. ANALYSIS

"On appeal, the reviewing court cannot set aside the judgment of the trial court sitting without a jury unless it is 'plainly wrong or without evidence to support it.'" Dep't of Soc. Servs., Div. of Child Support Enf't ex rel. Comptroller v. Flaneary, 22 Va. App. 293, 304-05 (1996) (quoting Code § 8.01-680). However, we review the circuit court's "statutory interpretations and legal conclusions *de novo*." Craig v. Craig, 59 Va. App. 527, 539 (2012) (quoting Navas v. Navas, 43 Va. App. 484, 487 (2004)).

"The determination of parentage, when raised in any proceeding, shall be governed by [Chapter 3.1 of Title 20 of the Code of Virginia]." Code § 20-49.2. Code § 20-49.4 provides, in part, that "[t]he standard of proof in any action to establish parentage shall be by clear and convincing evidence."

On appeal, Matzuk challenges the circuit court's determination under Code § 20-49.1 that

a material mistake of fact existed with regard to paternity.[6]

Code § 20-49.1 provides several ways to establish a legal parent-child relationship

between a man and a child. Specifically, Code § 20-49.1(B)(2) provides, in pertinent part, that a

parent and child relationship between a child and a man may be established by the following

means:

> A voluntary written statement of the father and mother made under
> oath acknowledging paternity and confirming that prior to signing
> the acknowledgment, the parties were provided with a written and
> oral description of the rights and responsibilities of acknowledging
> paternity and the consequences arising from a signed
> acknowledgment, including the right to rescind. . . . A written
> statement shall have the same legal effect as a judgment . . . and
> shall be binding and conclusive unless, in a subsequent judicial
> proceeding, the person challenging the statement establishes that

---

[6] In sections of their briefs styled as motions to dismiss, appellees Price and Bedell both argue that Matzuk's appeal is moot. They assert that Matzuk's assignment of error only addresses a finding that the circuit court made pursuant to Code § 20-49.1 and does not challenge the court's finding that the requirements of Code § 20-49.10 had been satisfied. Thus, they argue, because Code § 20-49.10 provides an independent ground for the court's granting of the motion to disestablish paternity, Matzuk's appeal has been rendered moot.

Here, the circuit court stated in its ruling that Code §§ 20-49.1 and -49.10, "when read in harmony with one another . . . require the disestablishment." The court's determination that the statutes should be harmonized was based on its reading of Wooddell. Wooddell involved a proceeding to determine child custody and visitation issues. The assignment of error in that case was that the circuit court erred in requiring Wooddell to prove paternity through genetic testing despite the existence of a signed acknowledgment of paternity. Thus, this Court was presented with a challenge to the circuit court's ruling that involved both a mistake of fact finding pursuant to Code § 20-49.1 and genetic testing conducted pursuant to Code § 20-49.10.

Here, in contrast, Matzuk only argues that the circuit court erred in its finding under Code § 20-49.1 that a mistake a fact existed. Because Matzuk only challenges the court's finding under Code § 20-49.1, that is the only statutory provision we address on appeal. Further, as we explain in this opinion, we hold that the circuit court did not err in its finding regarding the mistake of fact determination, and we conclude that this holding regarding Code § 20-49.1 is the best and narrowest ground for the resolution of this appeal. Therefore, we do not address the appellees' motions to dismiss in which they argue that Code § 20-49.10 provided an independent ground for the court's granting of the petition to disestablish paternity. See Alexandria Redevelopment & Hous. Auth. v. Walker, 290 Va. 150, 156 (2015) (noting that Virginia courts "strive to decide cases on the 'best and narrowest grounds available'" (quoting McGhee v. Commonwealth, 280 Va. 620, 626 n.4 (2010))).

the statement resulted from fraud, duress or a material mistake of fact.

Shortly after W.M.'s birth, Matzuk signed a voluntary acknowledgment of paternity, affirming that he was the biological father of W.M. This acknowledgment established a legal parent-child relationship between Matzuk and W.M. pursuant to Code § 20-49.1(B)(2). Matzuk's voluntary acknowledgment of paternity was "binding and conclusive" unless a subsequent judicial proceeding found that it resulted from either fraud, duress, or a material mistake of fact. In this case, the circuit court, in a subsequent judicial proceeding, found that the voluntary acknowledgment of paternity was a result of a material mistake of fact; thus, it was not "binding and conclusive" on the parties.

Matzuk argues that this determination was in error and thus the voluntary acknowledgment of paternity is still binding and conclusive. He contends that he and Price were aware that he might not have been W.M.'s biological father when the voluntary acknowledgment of paternity was executed. Thus, Matzuk argues, no material mistake of fact existed at the time the acknowledgment was executed because neither party "mistakenly" believed that he was the biological father when in fact he was not; rather, both parties knew that the issue was uncertain, yet made the deliberate decision to execute the acknowledgment of paternity. However, based upon the plain language of the statute itself, we reject this interpretation of when a material mistake of fact must occur in order to render a voluntary acknowledgment of paternity no longer binding and conclusive under Code § 20-49.1(B)(2).

Code § 20-49.1(B)(2) does not provide a definition of "material mistake of fact." Therefore, we turn to the language's ordinary usage to ascertain the meaning of the term. "When, as here, a statute contains no express definition of a term, the general rule of statutory construction is to infer the legislature's intent from the plain meaning of the language used." Jones v. Commonwealth ex rel. Moll, 295 Va. 497, 504 (2018) (quoting Hubbard v. Henrico Ltd.

P'ship, 255 Va. 335, 340 (1998)); see also Dietz v. Commonwealth, 294 Va. 123, 133 (2017) (applying the "ordinary and plain meaning" of words not defined in a statute (quoting Hilton v. Commonwealth, 293 Va. 293, 299 (2017))).

In the instant case, we find that the facts of this case fully support the circuit court's determination that the voluntary acknowledgment of paternity was a result of a "material mistake of fact" based upon the ordinary understanding of this language.

"Material" is defined as "[o]f such a nature that knowledge of the item would affect a person's decision-making process." Material, Black's Law Dictionary (10th ed. 2014). Here, it is obvious that Matzuk's acknowledgment of paternity, when he was not in fact W.M.'s biological father, was "material" in that the knowledge of the actual biological father of W.M. was an issue that "would affect a person's decision-making process."

"Mistake" is defined as "[a]n error, misconception, or misunderstanding; an erroneous belief." Mistake, Black's, supra. Again, it is clear that a "mistake," as that word is ordinarily used, occurred. Matzuk affirmed on the voluntary acknowledgment of paternity that he was the "natural parent of the child." Matzuk was not certain at the time that he was in fact W.M.'s biological parent. Later, the parties learned definitively through genetic testing done pursuant to Code § 20-49.10 that Matzuk was not W.M.'s biological father.[7] Therefore, the voluntary acknowledgement of paternity completed under Code § 20-49.1 was a result of Matzuk's affirmation that he was W.M.'s biological father—which clearly was "[a]n error, misconception, or misunderstanding."

---

[7] We note that Code § 20-49.10 allows for relief from a legal determination of paternity unless "the individual named as father . . . acknowledged paternity knowing he was not the father." In this case, based upon the testimony of Price and Matzuk, the evidence demonstrated that the parties did not know definitively that Matzuk was not the father at the time he signed the acknowledgment of paternity. While Matzuk did not challenge the court's finding that disestablishment of paternity was warranted under Code § 20-49.10, it is clear based upon the evidence adduced at the hearing that the court did not err in this determination.

Examining the statute's plain language, as we must, we reject Matzuk's assertion that no mistake of fact occurred because the parties were aware that he *might* not have been the father when he executed the voluntary acknowledgment of paternity. A plain reading of the statute makes clear that there is no requirement that a party have *no* knowledge that a fact might be untrue to create a mistake of fact. Rather, the party must act in part upon an an error, misconception, or misunderstanding. Here, Matzuk's affirmation that he was the biological father of W.M. was in error, and thus the parties' voluntary acknowledgment of paternity was a result of a "mistake of fact." See Rogers v. Wcisel, 877 N.W.2d 169 (Mich. Ct. App. 2015) (holding, in a motion to revoke acknowledgment of parentage, that a mistake of fact existed when the putative father's belief that he was the biological father was only partial or was somewhat in doubt and he later learned through genetic testing that he was not the biological father).

Under the unique circumstances of the instant case, we find that the record provided ample support for the circuit court's finding, by clear and convincing evidence, that the voluntary acknowledgment of paternity was not binding and conclusive under Code § 20-49.1 because it was a result of a mistake of fact, and that decision will not be disturbed on appeal.[8]

---

[8] Matzuk includes a second assignment of error on appeal in which he alleges that the circuit court erred in its finding that denying the motion to disestablish paternity would be tantamount to terminating Bedell's parental rights. The circuit court, in its ruling, noted that "the statutes, when read in harmony with one another, coupled with Mr. Bedell's constitutional right with regard to his parental rights, require the disestablishment." While the circuit court's language clearly indicates that it considered Bedell's constitutional rights under Troxel v. Granville, 530 U.S. 57 (2000), as part of its decision in granting the petition, we decline to address these comments because they are unnecessary to the resolution of this appeal. As we held *supra*, the circuit court did not err in finding that a mistake of fact existed under Code § 20-49.1, and this holding is sufficient to resolve this case on appeal. Pursuant to settled principles that provide that appellate courts "decide cases 'on the best and narrowest grounds available'" and "avoid deciding constitutional issues needlessly," Commonwealth v. Swann, 290 Va. 194, 196-97 (2015) (first quoting McGhee, 280 Va. at 626 n.4; and then quoting Christopher v. Harbury, 536 U.S. 403, 417 (2002)), we decline to address Matzuk's second assignment of error.

## III. CONCLUSION

For the reasons set forth above, we affirm the decision of the circuit court.

<u>Affirmed.</u>