COURT OF APPEALS OF VIRGINIA

Present:  Judges Malveaux, Athey and Senior Judge Petty
Argued by videoconference

UNPUBLISHED

OWEN W. MCGUIRE

v.     Record No. 0327-24-3

CITY OF ROANOKE, VIRGINIA, ET AL.

MEMORANDUM OPINION* BY
JUDGE CLIFFORD L. ATHEY, JR.
MAY 27, 2025

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
David B. Carson, Judge

Gary M. Bowman for appellant.

Timothy R. Spencer, City Attorney (Laura Carini, Deputy City
Attorney; Compton M. Biddle; OPN Law, on brief), for appellees.


On February 15, 2024, the Circuit Court of the City of Roanoke ("circuit court")

sustained a demurrer jointly filed by the City of Roanoke (the "City") and Fishburn Perk, LLC

("Fishburn Perk") (collectively "appellees") thereby dismissing Owen McGuire's ("McGuire")

declaratory judgment claim with prejudice.  McGuire had filed suit against the City seeking a

judgment declaring the deed conveying public land owned by the City to Fishburn Perk void.

McGuire, who owns land adjacent to the public property conveyed to Fishburn Perk, sought to

void the sale based upon the alleged failure of the City to follow the hearing requirements

provided for in Code § 15.2-1800(B) prior to conveying the land.  On appeal, McGuire assigns

error to the circuit court for: 1) incorrectly interpreting the terms "public hearings" and

"concerning such disposal" in Code § 15.2-1800(B) as only requiring a single public hearing

prior to conveying the subject property to Fishburn Perk; 2) holding that he did not have standing

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

to challenge the sale of the subject property; and 3) sustaining the demurrer on "all grounds," "includ[ing] . . . that [his] lawsuit was an untimely appeal of a zoning decision." Finding no error, we affirm.

## I. BACKGROUND[1]

This case arises out of a contract executed by Bob Cowell, in his capacity as City Manager of the City of Roanoke ("Manager Cowell"). The City sought to convey a 1.1-acre portion of Fishburn Park, which included a former caretaker's cottage, to Justin and Keri vanBlaricom (collectively "vanBlaricoms"). In a February 17, 2022 proposal, the vanBlaricoms sought to renovate the caretaker's cottage and convert it into a coffee house to be named Fishburn Perk. The proposal also included the vanBlaricoms' offer to cover the costs of renovating the property in return for being able to purchase the parcel and establish the coffee house. The City conditionally accepted their offer pending a public hearing and drafted a land sales contract in accordance with the terms of the vanBlaricoms' proposal.

On November 21, 2022, the Roanoke City Council ("City Council") held a public hearing to consider whether to approve the vanBlaricoms' proposed purchase of the improved parcel. McGuire, an adjacent landowner, attended the public hearing and spoke in opposition to the proposed sale. "Following [the receipt of] comments from the public" the City Council

---

[1] Since the circuit court dismissed McGuire's case on demurrer, this "recitation of the facts, of course, restates only factual allegations that, even if plausibly pleaded, are as yet wholly untested by the adversarial process." *A.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 614 (2019). Hence, in reviewing the circuit court's decision to sustain the demurrer against McGuire's amended complaint we "accept[] as true all facts properly pled, as well as reasonable inferences from those facts." *Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 514 (2014) (quoting *Steward v. Holland Fam. Props., LLC*, 284 Va. 282, 286 (2012)). But we may "not admit 'inferences or conclusions from facts not stated.'" *Friends of the Rappahannock v. Caroline Cnty. Bd. of Supervisors*, 286 Va. 38, 44 (2013) (quoting *Arlington Yellow Cab Co. v. Transp., Inc.*, 207 Va. 313, 319 (1966)). Nor may we "admit the correctness of the pleader's conclusions of law." *Yuzefovsky v. St. John's Wood Apts.*, 261 Va. 97, 102 (2001).

approved the sale of the improved parcel, and Manager Cowell executed a land sales contract with the vanBlaricoms consistent with their proposal.

Pursuant to the November 7, 2022 draft of the land sales contract which was publicly disclosed during the November 21, 2022 public hearing, in exchange for purchasing the 1.1-acre parcel and any corresponding easements needed for the property's use, the vanBlaricoms were required to "obtain[] all Permits and Approvals" as a condition precedent to closing on the land sales contract with the City. Another condition precedent required the vanBlaricoms to obtain approval from the City to rezone the property to accommodate Fishburn Perk's proposed use.[2] A further condition precedent provided that the City would "initiate appropriate proceedings as required by applicable laws of the Commonwealth of Virginia and ordinances of the City to request City Council to consider the release of [the City's] right" to the property. The land sales contract also "required [prior] adoption by the City Council of an Ordinance approving the . . . rezoning application." To that end, by ordinance, the "City Council was required to hold a public hearing before voting [on the] rezoning application." Once the hearing was held, then the application could be approved.

The terms of the draft land sales contract further required the vanBlaricoms to restrict the use of the property to only those land uses provided in "the applicable zoning district" and to refrain from subdividing the property after the closing. The contract also prohibited the vanBlaricoms from "[c]onstruct[ing] more than one . . . accessory structure[] . . . on the Property" or to "[m]ak[ing] any curb cuts" on the neighboring street. In addition, the

---

[2] This condition provided that upon release of the City's right to the property, the vanBlaricoms were required by this draft of the contract to "undertake and complete a Boundary Survey and Subdivision Plat of the Property, at [their] sole cost and expense," "apply for and receive approval from the City . . . for rezoning the Property to Mixed Use Planned Unit Development District," and provide ingress/egress easements to the City for utility access, while the City was to provide ingress/egress access easements to the vanBlaricoms to develop the property.

vanBlaricoms were unable to "[u]se . . . public access in order to access the Property, . . . except as provided in [an easement] for egress and ingress." The contract also barred the vanBlaricoms from "[u]s[ing] any portion of the [existing public] parking facilities" for Fishburn Perk business purposes. The contract further required the vanBlaricoms to include a restriction in the Deed "that the [cottage] shall not be[] razed, demolished[,] or removed, in whole or in part . . . , without the prior approval of [the City]." The City and the vanBlaricoms were originally scheduled to close on the property on December 20, 2022. Following the approval of the sale of the 1.1-acre parcel immediately following the November 21, 2022 public hearing, Manager Cowell and the vanBlaricoms finalized the November 7, 2022 draft of the sales contract and executed same on December 22, 2022.

On March 6, 2023, the City Council subsequently approved "Amendment No. 1" to the land sales contract, which extended the contract's closing date until June 30, 2023 so that the vanBlaricoms could "complete the rezoning process in order to close on the property." However, on May 15, 2023, the City Council denied the vanBlaricoms' rezoning application, leaving the contract's rezoning condition precedent unsatisfied. Next, on June 20, 2023, Manager Cowell requested in a City Council Agenda Report ("Report") that the Mayor and City Council authorize further amendments to the land sales contract. The Report recommended additional amendments to the sales contract as reflected in a proposed "Amendment No. 2" ordinance "to better address concerns raised by the public and City Council" surrounding the sale and to give additional time to the vanBlaricoms to complete the rezoning process. "Amendment No. 2" added a "Right of First Refusal" and required an additional rezoning application to accommodate anticipated parking at Fishburn Perk.[3] This second amendment further required

_____

[3] In particular, Amendment No. 2 required the vanBlaricoms to "limit parking set forth in the[ir] proposed [rezoning] plan to five (5) total spaces with one (1) space reserved for disabled

- 4 -

the vanBlaricoms to maintain one-half of an acre of the property as an open space and pushed back the closing date to September 30, 2023. The City Council then voted to authorize Manager Cowell to execute Amendment No. 2, which he executed along with the vanBlaricoms, thereby modifying the land sales contract a second time.

On August 21, 2023, the City Council held a public hearing on the vanBlaricoms' modified rezoning application that incorporated the additional terms contained in Amendment No. 2. Later that month, the City Council held a second public hearing on the modified rezoning application, which was "tantamount to a vote for or against the closing of the sale." McGuire also spoke during this public hearing in opposition to the rezoning and proposed sale. The City attorney advised City Council prior to the vote that "the contract places restrictions on the building and it shall not be razed, demolished, or removed in whole or in part without the prior approval of [the City]." The City attorney also advised City Council that the deed of conveyance would clarify that the approval of any demolition of the cottage was to come back to City Council, preventing the cottage on the property from being "demolished unless the Council or the Council sitting at the time of the request approve[d] it" by "simple majority." The City Council then voted to approve the vanBlaricoms' modified rezoning application.[4]

On September 27, 2023, McGuire filed a complaint against the City and the vanBlaricoms seeking a declaration that any future conveyance of the 1.1-acre parcel would be void because the City had not met the public hearing requirements in Code § 15.2-1800(B).

---

individuals to park." An additional rezoning was permitted because "the City's Zoning Administrator . . . opined that such an application is substantially different from the previous application filed by the [vanBlaricoms] and thus constitutes a new rezoning application." This decision by the Zoning Administrator occurred before the City Council denied the vanBlaricoms' first rezoning application on May 15, 2023. It is unclear from the record whether this concern is what necessitated the denial of the first rezoning application.

[4] McGuire failed to challenge the City's rezoning decision.

- 5 -

McGuire's complaint first alleged that the City intended not to require that the amended demolition covenant be placed in the sales contract and that any such covenant would be ineffective anyway since the City failed to hold a separate public hearing to approve the amended demolition covenant. His complaint also alleged that he "owned the real property adjacent" to the subject property and therefore "ha[d] a property interest in the inclusion of an amended demolition covenant [from the contract in the final deed]." McGuire further explained that "the quantitative value and qualitative enjoyment of [his] property w[ould] be diminished" by the vanBlaricoms if they demolished the cottage on the property, which he claimed to be protected by the putative amended demolition covenant. Moreover, McGuire alleged that he would suffer "concrete harm" from a potential future demolition of "whole or . . . part" of the cottage to operate Fishburn Perk.

However, McGuire failed to allege that the City or Fishburn Perk intended to demolish the building on the property upon closing of the sale, or sometime in the near future. Neither did his complaint assert that the November 21, 2022 or August 21, 2023 public hearings were procedurally defective, nor did McGuire assert that he was a signatory or beneficiary under the land sales contract. In fact, McGuire failed to allege any other interest in the transaction other than being a landowner of the adjacent property.[5] The City subsequently conveyed the 1.1-acre parcel to Fishburn Perk, and the deed of conveyance included a covenant "that the [b]uilding shall not be razed, demolished or removed, in whole or in part (other than removal of portions of the existing structure set forth in [the proposal]), without the prior written approval of the Council of the City of Roanoke."

---

[5] He also did not challenge the sale price as insufficient or the City's efforts in evaluating the deal.

- 6 -

On October 11, 2023, the City and the vanBlaricoms filed a joint demurrer first challenging McGuire's standing in the declaratory judgment action as well as whether his filing of the complaint in the circuit court was timely. In response, McGuire filed an amended complaint against the City on November 27, 2023, substituting Fishburn Perk as a party defendant for the vanBlaricoms and continuing to seek a declaration that any deed of conveyance was void.

The City and Fishburn Perk also demurred to the amended complaint, asserting that McGuire's amended complaint constituted a belated challenge to a zoning decision or in the alternative that McGuire failed to state a cause of action for purposes of a declaratory judgment under Code § 15.2-1800(B). They further argued that *because* McGuire's complaint alleged that the City held a hearing and approved the sales contract before the sale occurred, McGuire lacked standing to seek declaratory relief. McGuire opposed the joint demurrer and moved for leave to file a second amended complaint. On February 9, 2024, the circuit court heard argument by the parties on the joint demurrer and motion for leave to amend. Three days later, "[u]pon consideration of the pleadings . . . and . . . argument of counsel," the circuit court issued a letter opinion sustaining the joint demurrer "on all grounds." Then, on February 15, 2024, the circuit court entered a final order consistent with its letter opinion, sustaining the demurrer, dismissing the case with prejudice, and finding that McGuire's motion to amend was moot. McGuire appealed.

## II. ANALYSIS

### A. *Standard of Review*

"[T]he purpose of a demurrer is to determine whether a complaint states a cause of action upon which the requested relief may be granted." *Terry v. Irish Fleet, Inc.*, 296 Va. 129, 135 (2018) (quoting *Murayama 1997 Tr. v. NISC Holdings, LLC*, 284 Va. 234, 245 (2012)). Hence,

as this poses a question of law, "[w]e examine the circuit court's decision to sustain [a] demurrer under a de novo standard of review." *Wilburn v. Mangano*, 299 Va. 348, 353 (2020) (second alteration in original) (quoting *Mark Five Constr., Inc. v. Castle Contractors*, 274 Va. 283, 287 (2007)). In doing so, to review the circuit court's decision at the demurrer stage "we accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to the claimant." *Young-Allen v. Bank of Am., N.A.*, 298 Va. 462, 467 (2020) (quoting *Parker v. Carilion Clinic*, 296 Va. 319, 330 (2018)). "The issue of [the appellant's] standing to bring the present . . . claim[] involves a purely legal question of statutory interpretation that we review de novo." *Antisdel v. Ashby*, 279 Va. 42, 47 (2010).

Further, "[a] demurrer will be sustained when the pleading it challenges lacks sufficient definiteness to enable the court to find the existence of a legal basis for its judgment." *Wilburn*, 299 Va. at 353 (quoting *Mark Five Constr.*, 274 Va. at 287-88). Hence, as "[a] demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof," *Reston Hosp. Ctr., LLC v. Remley*, 59 Va. App. 96, 109 (2011) (quoting *Glazebrook v. Bd. of Supervisors of Spotsylvania Cnty.*, 266 Va. 550, 554 (2003)), "[a] plaintiff can survive a demurrer with well-pleaded allegations of standing, [though] it cannot succeed thereafter without proof of standing," *Seymour v. Roanoke Cnty. Bd. of Supervisors*, 301 Va. 156, 166 n.3 (2022). And in accordance with this understanding, "[i]t is true that the general rule is that in an action for a declaratory judgment, if the plaintiff's pleading alleges the existence of an actual or justiciable controversy it states a cause of action and is not demurrable." *First Nat'l Tr. & Sav. Bank v. Raphael*, 201 Va. 718, 721 (1960). But

> [where] the allegations of the complaint not only fail to show a
> right to executory relief, but also fail to show a right to declaratory
> relief, there is no reason why a demurrer should not be interposed;

and where it is plain on the record that there is no basis for
declaratory relief, a demurrer is properly sustained.

*Id.* (quoting 16 Am. Jur., *Declaratory Judgments* § 64, at 81-82 (1959)).

    B. *The circuit court did not err in dismissing McGuire's declaratory judgment action
for lack of standing since McGuire failed to demonstrate that he was aggrieved by
the City's failure to hold a second hearing based upon the plain language of Code
§ 15.2-1800(B).*

McGuire assigns error to the circuit court's decision to sustain the joint demurrer and

dismiss his complaint seeking declaratory relief on the grounds that he did not have standing to

challenge the conveyance of the 1.1-acre improved parcel as void as a result of the City's non-

compliance with Code § 15.2-1800(B). He contends that since "he has a direct personal stake in

preventing [the] demolition" of the building on the property and that "no public hearing was held

concerning the disposal of the property," the circuit court's finding was erroneous because his

pleadings "demonstrate [that he has] a personal stake in the outcome of the controversy."

*Goldman v. Landsidle*, 262 Va. 364, 371 (2001). To begin, we review Virginia's applicable

precedent pertinent to his putative claim.

    1. Adjudication of declaratory relief related to standing in land use cases under the
Declaratory Judgment Act, Code § 8.01-184 *et seq.* ("Declaratory Judgment
Act" or the "Act")

Under the Declaratory Judgment Act:

[i]n cases of actual controversy, circuit courts within the scope of
their respective jurisdictions shall have power to make binding
adjudications of right, whether or not consequential relief is, or at
the time could be, claimed . . . . Controversies involving the
interpretation of deeds, wills, and other instruments of writing,
statutes, municipal ordinances and other governmental regulations,
may be so determined, and this enumeration does not exclude other
instances of actual antagonistic assertion and denial of right.

Code § 8.01-184. Since "[d]eclaratory judgments are creatures of statutes[,] [w]e are told when

they may be procured and how" by the General Assembly through the plain text of the Act.

*D. D. Jones Transfer & Warehouse Co. v. Commonwealth*, 174 Va. 184, 193 (1939). By its

plain text, the Act requires that the "dispute [in question] 'must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character.'" *Charlottesville Area Fitness Club Operators Ass'n v. Albemarle Cnty. Bd. of Supervisors*, 285 Va. 87, 98 (2013) (quoting *Erie Ins. Grp. v. Hughes*, 240 Va. 165, 170 (1990)). And it further requires that "[t]he controversy [at bar], . . . must be one that is 'justiciable,' meaning a controversy in which there are 'specific adverse claims, based upon present rather than future or speculative facts, [that] are ripe for judicial adjustment.'" *Blue Cross & Blue Shield v. St. Mary's Hosp., Inc.*, 245 Va. 24, 35 (1993) (fourth alteration in original) (quoting *City of Fairfax v. Shanklin*, 205 Va. 227, 229 (1964)). But the right may not be of "hypothetical or abstract character." *Bd. of Supervisors of Henrico Cnty. v. Fralin & Waldron, Inc.*, 222 Va. 218, 224 (1981) (quoting *Justiciable*, *Black's Law Dictionary* (5th ed. 1979)). Thus, for McGuire to perfect "a claim for declaratory judgment," he "must articulate legally enforceable rights, and [we] must be able to evaluate those claims of right." *Friends of the Rappahannock v. Caroline Cnty. Bd. of Supervisors*, 286 Va. 38, 48 (2013).

Moreover, this "actual-controversy requirement protects a court from issuing an 'advisory opinion'—which is an essential concern of both the standing doctrine and the Declaratory Judgment Act." *Morgan v. Bd. of Supervisors of Hanover Cnty.*, 302 Va. 46, 67 (2023) (first quoting *Carney v. Adams*, 592 U.S. 53, 58 (2020); and then citing *Treacy v. Smithfield Foods, Inc.*, 256 Va. 97, 103-04 (1998)). However, in evaluating standing, the question before a circuit court is slightly different. As recently reiterated by this Court and the Supreme Court of Virginia, "standing to maintain an action is a preliminary jurisdictional issue having no relation to the substantive merits of an action." *Green v. Portfolio Recovery Assocs., LLC*, 83 Va. App. 28, 40 (2024) (quoting *Morgan*, 302 Va. at 58). "'The concept of standing concerns itself with the characteristics of the person or entity who files suit,' and 'as "a

preliminary jurisdictional issue," the standing doctrine asks only whether the claimant truly has "a personal stake in the outcome of the controversy."'" *Id.* (first quoting *Morgan*, 302 Va. at 58; and then quoting *Morgan*, 302 Va. at 59). Thus, standing requires that we not "proceed to the merits until a party shows a 'particularized injury' to a cognizable personal or property right." *Howell v. McAuliffe*, 292 Va. 320, 355 (2016) (Mims, J., dissenting).

Moreover, where the plaintiff contends that he has standing to pursue a cause of action under a statute, he must show that he "possess[es] the 'legal right' to bring the action, which depends on the provisions of the relevant statute." *Cherrie v. Va. Health Servs., Inc.*, 292 Va. 309, 315 (2016) (quoting *Small v. Fed. Nat'l Mortg. Ass'n*, 286 Va. 119, 126 (2013)). Here, McGuire filed suit under the Declaratory Judgment Act seeking to vindicate his asserted statutory right arising pursuant to Code § 15.2-1800. Hence, before we can evaluate the merits of his claim, we must first determine, framework aside, whether his pleading demonstrates that he has a *right* to assert as well as a particularized injury before deciding whether he has standing to seek declaratory relief.

Generally "[u]nder well-settled principles, '[a] plaintiff has standing to institute a declaratory judgment proceeding if it has a "justiciable interest" in the subject matter of the proceeding, either in its own right or in a representative capacity.'"[6] *Deerfield v. City of Hampton*, 283 Va. 759, 764 (2012) (second alteration in original) (quoting *W.S. Carnes, Inc. v. Bd. of Supervisors of Chesterfield Cnty.*, 252 Va. 377, 383 (1996)). "In order to have a 'justiciable interest' in a proceeding, the plaintiff must demonstrate an actual controversy between the plaintiff and the defendant, such that his rights will be affected by the outcome of the case." *W.S. Carnes*, 252 Va. at 383. This justiciable interest is demonstrated only when the plaintiff "'show[s] that he has been aggrieved by the judgment or decree appealed from,'

---

[6] McGuire does not assert that he has representative standing.

- 11 -

[because] 'he does not have standing to assert purely abstract questions' and [because] he 'has standing *only to seek the correction of errors injuriously affecting him*.'" *Braddock, L.C. v. Bd. of Supervisors of Loudon Cnty.*, 268 Va. 420, 425-26 (2004) (quoting *Harbor Cruises, Inc. v. State Corp. Comm'n*, 219 Va. 675, 676 (1979) (per curiam)).

In the zoning context, however, where issues involving "land use decision[s]" are concerned, the Supreme Court of Virginia has enumerated a different "two-prong test for determining whether certain plaintiffs [owning adjacent properties] have standing." *Seymour*, 301 Va. at 164 (analyzing standing pertinent to zoning decisions appealed under Code § 15.2-2311). Under this test, "[f]irst, the [plaintiff] must own or occupy 'real property within or in close proximity to the property that is the subject of' the land use determination, thus establishing that it has 'a direct, immediate, pecuniary, and substantial interest in the decision.'" *Id.* at 165 (second alteration in original) (quoting *Friends of the Rappahannock*, 286 Va. at 48). "[And] [s]econd, the [plaintiff] must allege facts demonstrating a particularized harm to 'some personal or property right, legal or equitable, or imposition of a burden or obligation upon the [plaintiff] different from that suffered by the public generally.'" *Id.* (third and fourth alterations in original) (quoting *Friends of the Rappahannock*, 286 Va. at 48). This standard has been deemed "appropriate in the context of a challenge to a land use decision by means of a declaratory judgment action" especially where the statute or ordinance in question provides judicial review for those "aggrieved." *Friends of the Rappahannock*, 286 Va. at 47. As derived from the zoning context, in showing "particularized harm," the Supreme Court has opined that when this type of standing applies, we are to determine whether the plaintiff is "aggrieved" by the decision in question. *Va. Beach Beautification Comm'n v. Bd. of Zoning Appeals*, 231 Va. 415, 419 (1986). "In order for a party to be 'aggrieved,' it must affirmatively appear [from the complaint] that such person had some direct interest in the subject matter of the proceeding that

he seeks to attack." *Anders Larsen Tr. v. Bd. of Supervisors of Fairfax Cnty.*, 301 Va. 116, 121 (2022) (quoting *Historic Alexandria Found. v. City of Alexandria*, 299 Va. 694, 697-98 (2021)). Thus, "[a] party has standing [as an aggrieved party] if it can 'show an immediate, pecuniary, and substantial interest in the litigation, and not a remote or indirect interest.'" *Id.* (quoting *Harbor Cruises*, 219 Va. at 676). However, the Supreme Court of Virginia has noted that "any distinction between an 'aggrieved party' and 'justiciable interest' is a distinction without a difference in [these types of] declaratory judgment actions." *Friends of the Rappahannock*, 286 Va. at 48.

Since Code § 15.2-1800 does not prescribe a standing requirement to bring suit, McGuire raises two different arguments concerning which standard applies. He first contends that either the "justiciable interest" standard applies and that his pleadings demonstrate he has the "legal stake" required to proceed. In the alternative, he adopts the standard from *Friends of the Rappahannock*, which applies to adjacent property owners in zoning cases. Since the Supreme Court of Virginia has noted "any distinction between an 'aggrieved party' and 'justiciable interest' is a distinction without a difference," and McGuire pleaded that he owned a property adjacent to the subject property, we will assume without deciding that *Friends of the Rappahannock* is applicable in this matter since our analysis pertaining to McGuire's interest would not differ under either standard.[7] Now, we turn to his pleadings to determine if he has standing to seek a declaratory judgment pertaining to an alleged hearing requirement in Code § 15.2-1800.

---

[7] Thus, by doing so, we leave open the question of which standard for proving standing in these cases for another day, and resolve this case on the best and narrowest grounds available. *See Ali v. Commonwealth*, 75 Va. App. 16, 37 n.9 (2022).

2. McGuire does not have standing to seek a declaratory judgment since his pleadings fail to show that he was "aggrieved" by the City's failure to hold a second hearing under Code § 15.2-1800 after the land sales contract was amended.

McGuire asserts that the circuit court erred when it found that he did not have standing to challenge the validity of the City's conveyance of the subject property to Fishburn Perk. He claims, under his interpretation of the statute, that the City was required to hold a public hearing pertaining to the amendments made to the contract *after* it was approved by the City Council following the November 21, 2022 public hearing. McGuire further contends that the plain language of the statute requires the City to hold a public hearing every time a change is made to the contract in order to comply with Code § 15.2-1800.[8] We disagree.

Resolving whether McGuire has standing to seek declaratory relief requires us to interpret the text of Code § 15.2-1800(B) to determine whether he has a statutory private right of action pertaining to the holding of a second public hearing. In doing so, we "presume that the legislature chose, with care, the words it used when it enacted the relevant statute[]" as it is "our duty to interpret the statute as written and when this is done our responsibility ceases." *Tvardek v. Powhatan Vill. Homeowners Ass'n*, 291 Va. 269, 277 (2016) (first quoting *Zinone v. Lee's Crossing Homeowners Ass'n*, 282 Va. 330, 337 (2011); and then quoting *City of Lynchburg v. Suttenfield*, 177 Va. 212, 221 (1941)). "[W]e begin with the statute's text, focusing on the plain meaning of the words chosen by the General Assembly in the context that they have been used." *Leggett v. Sanctuary at False Cape Condo. Ass'n, Inc.*, 303 Va. 128, 132 (2024). And "we

---

[8] Because we resolve McGuire's appeal on his first and second assignments of error, we decline to reach the third as we further resolve this case on the "best and narrowest grounds available." *Nottingham v. Commonwealth*, 77 Va. App. 60, 67 n.6 (2023) (quoting *Matzuk v. Price*, 70 Va. App. 474, 481 n.6 (2019)). We do note though that the circuit court's characterization of McGuire's complaint as "an untimely appeal of a zoning decision" is irrelevant to his appeal of the sustained demurrer to his amended complaint seeking declaratory relief.

'apply[] the plain meaning of the words unless they are ambiguous or [doing so] would lead to an absurd result.'" *Eley v. Commonwealth*, 70 Va. App. 158, 164 (2019) (alterations in original) (quoting *Wright v. Commonwealth*, 278 Va. 754, 759 (2009)). This interpretative approach holds true to "[t]he one canon of construction that precedes all others," which is that "[w]e presume that the legislature says what it means and means what it says." *Tvardek*, 291 Va. at 277 (second alteration in original) (quoting *In re Woodley*, 290 Va. 482, 491 (2015)).

Further, "[t]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction." *Stanton v. Va. Beach-Fire Operations*, 79 Va. App. 587, 592 (2024) (quoting *Ford Motor Co. v. Gordon*, 281 Va. 543, 549 (2011)). But, while conducting our analysis, we may not rewrite the statute's language under the "guise of judicial interpretation." *Tvardek*, 291 Va. at 278 (quoting *Holly Hill Farm Corp. v. Rowe*, 241 Va. 425, 431 (1991)). Instead, when we construe statutes, we "are bound, if it is possible, to give effect to all its several parts. No sentence, clause or word should be construed as unmeaning or surplusage, if a construction can be legitimately found which will give force to and preserve all the words of the statute." *King v. Empire Collieries Co.*, 148 Va. 585, 589-90 (1927) (quoting *Black Inter. Laws*, page 83). Hence, we

> cannot by construction supply a *casus omissus* by giving force and effect to the language of the statute when applied to a subject about which nothing whatever is said, and which to all appearances was not in the minds of the legislature at the time of the enactment of the law.

*Chandler v. Peninsula Light & Power Co.*, 152 Va. 903, 908 (1929) (quoting 25 Ruling Case Law § 225, at 974 (1919)). And "[w]hen a statute is silent . . . we have no authority to infer a statutory private right of action without demonstrable evidence that the statutory scheme necessarily implies it." *Lafferty v. Sch. Bd. of Fairfax Cnty.*, 293 Va. 354, 362 (2017) (second alteration in original) (quoting *Cherrie*, 292 Va. at 315). We now turn to the text.

- 15 -

Code § 15.2-1800(B) provides in pertinent part:

> Subject to any applicable requirements of Article VII, Section 9 of the Constitution, any locality may sell . . . its real property, . . . provided that no such real property, whether improved or unimproved, shall be disposed of until the governing body has held a public hearing concerning such disposal.

"When, as here, a statute contains no express definition of a term, the general rule of statutory construction is to infer the legislature's intent from the plain meaning of the language used." *Matzuk v. Price*, 70 Va. App. 474, 483 (2019) (quoting *Jones v. Commonwealth ex rel. Moll*, 295 Va. 497, 504 (2018)). "To discover the plain and ordinary meaning of everyday language, we consult general-purpose dictionaries," *Turner v. Massie MHP, LLC*, 81 Va. App. 600, 610 (2024) (quoting *Tomlin v. Commonwealth*, 302 Va. 356, 372 (2023)), "or 'pertinent analysis in prior case[s],'" *id.* (alteration in original) (quoting *Eley*, 70 Va. App. at 165). The term "public hearing" at its core is evocative of the constitutional due process requirement "that some form of hearing is required before an individual is finally deprived of a property interest."[9] *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *see, e.g.*, *WLR Foods, Inc. v. Cardosa*, 26

---

[9] Since the transactions conducted under Code § 15.2-1800(B) involve the locality's administration of its private property, the locality's *jus privatum*, they involve the public's inherent right to such property, administered through the locality's *jus publicum*, which includes access and use. In owning property, the localities retain both a right of *jus publicum*, "the right of jurisdiction and dominion for governmental purposes," *Va. Marine Res. Comm'n v. Chincoteague Inn*, 287 Va. 371, 382 (2014) (quoting *Commonwealth v. City of Newport News*, 158 Va. 521, 546 (1932)), and a right of *jus privatum*, "'the right of private property' retained by the Commonwealth because it is 'proprietor' of the public domain," *id.* at 383 (quoting *City of Newport News*, 158 Va. at 546), permitting it to "act 'in a proprietary capacity' because it also has 'the right and title of a private owner,'" *id.* (quoting *G. L. Webster Co. v. Steelman*, 172 Va. 342, 357 (1939)). *Jus publicum*, "is the Commonwealth's sovereign authority to hold the public domain 'for the interest or benefit . . . of the public.'" *Id.* at 382 (alteration in original) (quoting *G. L. Webster*, 172 Va. at 357). As McGuire does not raise any issue related to how the hearings in question were conducted below, we take no position whatsoever on the constitutional due process hearing requirements within Code § 15.2-1800(B). We further note the distinctions between private and public rights under Code § 15.2-1800(B) to categorize what right McGuire's asserts he has standing to vindicate, thus, only minimally dredging its depths following the facts of the case.

Va. App. 220, 227 (1997) (noting Virginia's public hearing due process requirements and that these requirements vary depending on statutory context as "[d]ue process is flexible and calls for such procedural protections as the particular situation demands"). The word "shall" when used in statutory text may denote either a "mandatory" or "directory" command. *Bland-Henderson v. Commonwealth*, 303 Va. 211, 219 (2024) (quoting *Rickman v. Commonwealth*, 294 Va. 531, 537 (2017)). "A mandatory 'shall' command 'carries with it a specific, exclusive remedy,' while a directory 'shall' command does not." *Id.* (quoting *Rickman*, 294 Va. at 537). But "[t]he nature of a particular 'shall' command—whether mandatory or directory—depends entirely on the legislature's intended meaning as discerned from 'the nature, context, and purpose' of the relevant statute." *Id.* (quoting *Huffman v. Kite*, 198 Va. 196, 202 (1956)). "Concerning," has been noted as "mean[ing] 'relating to,' and [as being] the equivalent of 'regarding, respecting, about.'" *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018) (quoting *Concerning*, *Webster's Third New International Dictionary* (1976)). Also, the Supreme Court of Virginia has noted that the word "'[s]uch' is defined by [one dictionary] as 'representing the object as already particularized in terms which are not mentioned.'" *Strawberry Hill Land Corp. v. Starbuck*, 124 Va. 71, 86 (1918) (quoting *State v. Estep*, 71 P. 857, 859 (Kan 1903)). "Such" has also been described as "a descriptive and relative word, and refers to the last antecedent, unless the meaning of the sentence would thereby be impaired." *Id.* And it "refers to what has been specified, and means the same as has been theretofore mentioned" and "[i]t means identical with or similar to something which has been already specified or implied." *Id.*

Further, in evaluating the ordinary meaning of the term "disposal," we note that the root of the word is derived from the Middle French word *poser*, which means "to put or place." *Disposal*, *Third New International Dictionary* (1971). In accordance with these roots, the verb tense for the word "disposal," "dispose," has been defined by one dictionary to mean: "to place,

- 17 -

distribute, or arrange esp. in an orderly or systematic way . . . ; to apportion or allot . . . to transfer into new hands or to the control of someone else . . . ; to get rid of: throw away." *Dispose*, *Third New International Dictionary*, *supra*.  Another dictionary provides that the term may mean "to pass into the control of someone else; to alienate, relinquish, part with, or get rid of; to put out of the way; to finish with; to bargain away."  *Dispose*, *Black's Law Dictionary* (6th ed. 1990).  Contextually, the disposal of property is "an incident of the ownership of property" and is encompassed by the "inherent right of the owner" to alienate their interest.  David A. Thomas, 2 *Thompson on Real Property* § 14.03 (2024).  And, where a term is used in the singular in statutory text, we are informed that "[u]nder Code § 1-227, '[a] word used in the singular includes the plural and a word used in the plural includes the singular'" unless the statutory context provides otherwise.  *Burkholder v. Palisades Park Owners Ass'n*, 76 Va. App. 577, 584 (2023) (second alteration in original).

McGuire contends that the plain language in Code § 15.2-1800(B) required the City to conduct a second public hearing to approve the sale of the subject property to Fishburn Perk, a right he may enforce since it was vested in him as an adjacent landowner who would otherwise suffer property damage, because changes were made to the underlying contract and a hearing "concerning such disposal" must be a hearing on the final terms of the sale.  Specifically, he claims that this provision requires the City to conduct a public hearing to approve the agreement each time it is changed because it is in effect "a different deal," without regard to previous approval at prior hearings.  Considering the provision's text and applicable precedent, we find McGuire's argument unpersuasive.

The text of Code § 15.2-1800(B) leads to the following conclusions regarding its hearing requirements and the rights under the provision.  Foremost, Code § 15.2-1800(B) provides a mandatory condition to a locality's sale of its real property: *a single* public hearing on the topic

of the sale that comports with due process requirements.  *See Bland-Henderson*, 303 Va. at 219;

*Strawberry Hill*, 124 Va. at 86; *WLR Foods*, 26 Va. App. at 227.  From this text, it can be

gleaned the public has a very limited right to a hearing that comports with constitutional rights

*before* the sale is finalized.[10]  Further, the meaning of "[d]isposal" in this context is consistent

with "transfer into new hands," *Dispose*, *Third New International Dictionary*, *supra*, or

"alienate, relinquish, part with, . . . [or] to bargain away," *Dispose*, *Black's Law Dictionary*,

*supra*, in conjunction with the General Assembly's use of the term "sell" earlier in the provision.

Though "hearing" may also encompass "hearings" per Code § 1-227, the use of "hearing" in this

context denotes that the locality *may* hold more than one public hearing regarding the sale and

that any further hearings would be surplus to this requirement.[11]  *Burkholder*, 76 Va. App. at

---

[10] "The Commonwealth retains 'a most solemn duty to [both] administer the *jus privatum* of the [Commonwealth] and to exercise its *jus publicum* for the benefit of the people.'"  *Va. Marine Res.*, 287 Va. at 383 (alterations in original) (quoting *City of Newport News*, 158 Va. at 549).  And "[i]n the exercise of its right of *jus privatum*, . . . the Commonwealth cannot 'relinquish, surrender, alienate, destroy, or substantially impair' the right of *jus publicum*, or the rights of the people inherent to the *jus publicum*, *except as authorized by the Constitution of Virginia*."  *Id.* (emphasis added) (quoting *City of Newport News*, 158 Va. at 547).

[11] This holding, however, is limited by the fact that here McGuire only asserted an additional hearing was required due to a change in the contract's terms, and the evidence only shows that the City made changes to non-substantive terms of the underlying contract, not the contract's substantive terms (e.g., price of sale, amount of land conveyed, etc.).  *See Cleaton v. Chambliss*, 27 Va. (6 Rand.) 86, 98 (1827) (noting that "an immaterial alteration [to a contract term] may be defined as an alteration of some collateral or inoperative part of an instrument which has no bearing upon its execution").  Per the use of the term "concerning" in Code § 15.2-1800(B), it is conceivable that there may be cases where after the public hearing in question, a locality may alter such a material term or change the contract to the point it is not of the same substance that the public hearing *concerned*.  *See Dobyns v. Rawley*, 76 Va. 537, 544 (1882) (holding that "[a] material alteration of a bond or note after its execution, . . . intentionally made by one having an interest in it, and without the consent of the party bound by it, invalidates the instrument as to such party" with "the chief reason of the rule [being] that the 'alteration destroys the identity of the contract'" (quoting *Woodworth v. President, Dirs. & Co. of the Bank of Am.*, 19 Johns. 391, 424 (N.Y. 1822))).  Or that there may be indications of fraud from the post-hearing alterations that may require invalidation of the conveyance for a similar reason.  *See Flook v. Armentrout's Adm'r*, 100 Va. 638, 642 (1902) (noting requirements to invalidate a fraudulent conveyance).  Were either situation to occur, further analysis may be needed to

584. To conclude otherwise would twist the meaning of "such" or "disposal" and ignore the effect of the General Assembly's choice of "a hearing" as a condition precedent to satisfy the statute's requirements. *See King*, 148 Va. at 589-90. Worse yet, adopting McGuire's interpretation would require us to supply a "*casus omissus*" in the form of additional hearing conditions related to changes "concerning [the] disposal" or would have us read "hearing" as "hearings" for purposes of the statute's mandatory command, both avenues being contrary to the General Assembly's deliberate choice in terms. *Chandler*, 152 Va. at 908; *see also Tvardek*, 291 Va. at 278. Contrary to McGuire's contentions, if the General Assembly sought to impose the requirement that a locality had to conduct a public hearing *each and every time* there was a change to the underlying contract for the previously approved transaction, it would have done so explicitly. And as the General Assembly declined to impose this specific requirement, we will not do so either.[12]

Moreover, from this text we conclude that there is a lack of "demonstrable evidence" that Code § 15.2-1800(B) contains the statutory private right of action that McGuire seeks to assert. *Lafferty*, 293 Va. at 362. By providing that localities are required to hold a public hearing "concerning [the] disposal" of the property in question, the General Assembly provided a public right in that hearing itself that may be asserted and enforced through declaratory relief where the

determine whether an additional public hearing may be required under Code § 15.2-1800(B), focusing on what the original transaction and hearing *concerned*. Nevertheless, as neither scenario is encompassed by McGuire's assertions or the facts of this case, these hypotheticals are not before us now, we take no position on their potential merits, and our concern is noted for a different day.

[12] Our interpretation also accords with a 2013 opinion of the Attorney General finding that Code § 15.2-1800(B) "generally sets forth a locality's responsibility with respect to the sale of real property, and permits the disposal of such realty by public or private sale *after public hearing*." 2013 Op. Va. Att'y Gen. 213, 216 (emphasis added). Hence, "[a]lthough it is not binding on this Court," we find it "'persuasive' . . . [to] construing legislative intent" in this case. *Nejati v. Stageberg*, 286 Va. 197, 203 (2013) (quoting *Clinchfield Coal Co. v. Robbins*, 261 Va. 12, 18 (2001)).

locality fails to hold the hearing or where the hearing fails to comport with minimal due process requirements. Code § 15.2-1800(B); *WLR Foods*, 26 Va. App. at 227. When this hearing has been held and complies with those standards, however, this public right is conditionally extinguished and the locality continues to hold a private right in the property for the purpose of effectuating the conveyance by "bargain[ing it] away." *Dispose*, *Black's Law Dictionary*, *supra*. In that case, challenges to the conveyance require the plaintiff to show that they are a party, a privy, or an intended third-party beneficiary of the *underlying contract* or deed for them to have standing according to general principles of contract and real property law.[13] As a result, a mere allegation that an owner of an adjacent property would suffer a "[l]oss of property value," *Anders Larsen Tr.*, 301 Va. at 122, is insufficient for standing to lie for a challenge to the conveyance *after* the public hearing, without the challenger providing that they have grounds for standing under the contract since the landowner "has standing *only to seek the correction of errors injuriously affecting him*," and he is a legal stranger to the underlying transaction, *Braddock, L.C.*, 268 Va. at 426 (quoting *Harbor Cruises*, 219 Va. at 676). Otherwise, to allow adjacent landowners to seek declaratory relief on the fact of potential changes in property value alone would allow them to possess in essence an extra "dissenter's veto" to a contract they are not a party to, which would "create 'greater rights than those which they previously possessed,' and 'bring into being' . . . relationship[s] . . . that [did] not [previously] exist," against the purpose of the Declaratory Judgment Act. *Charlottesville Area Fitness*, 285 Va. at 101 (first quoting *Liberty Mut. Ins. Co. v. Bishop*, 211 Va. 414, 421 (1970); and then quoting *Williams v. S. Bank of Norfolk*, 203 Va. 657, 662 (1962)).

---

[13] *See, e.g.*, *Cemetery Consultants, Inc. v. Tidewater Funeral Dirs. Ass'n*, 219 Va. 1001, 1003 (1976) ("The general rule at common law is that an action on a contract must be brought in the name of the party in whom the legal interest is vested, and this legal interest is ordinarily vested only in the promisee or promisor; consequently, they or the[ir] privies are generally the only persons who can sue on the contract.").

It follows from our interpretative conclusions that McGuire's claim fails to show he was "aggrieved" by the City's failure to conduct a second public hearing. Even though McGuire specifically contended in his complaints that he "owned the real property adjacent" to the subject property and somehow "ha[d] a property interest in the inclusion of an amended demolition covenant [in the contract] because the quantitative value and qualitative enjoyment of [his] property w[ould] be diminished" by conveyance, his asserted harm is far too speculative for him to have a justiciable interest to seek declaratory relief. McGuire has no such property interest. In theory, he could only vindicate his limited *public* right to such a hearing, which is "some direct [not remote] interest," *Anders Larsen Tr.*, 301 Va. at 121 (quoting *Historic Alexandria*, 299 Va. at 697), that is "separate and distinct from the interest of the public at large," *Goldman*, 262 Va. at 373. And we find that his complaint, taken as true, does not, as the City was not required to hold a second hearing under Code § 15.2-1800(B).

Further, McGuire's amended complaint also fails to satisfy the "aggrieved person" standing standard as his asserted harm—the demolition of the building—is merely speculative from the face of his complaint. McGuire's amended complaint neither asserted that the building had been marked for demolition nor did he assert any facts showing that it would be demolished at any time in the future. He only asserts that the demolition covenant in the final contract does not properly protect his property against such risk. Hence, by his own pleadings taken as true, the harm McGuire seeks to avoid is "of [a] 'hypothetical or abstract character'" as there is no indication from his pleadings that it will ever come into contention. *Fralin & Waldron, Inc.*, 222 Va. at 224 (quoting *Justiciable*, *Black's Law Dictionary* (5th ed. 1979)). So, his claim could not be justiciable as it never alleged harm that stemmed from "present . . . facts, . . . ripe for judicial adjustment." *St. Mary's Hosp.*, 245 Va. at 35 (quoting *Shanklin*, 205 Va. at 229).

Thus, it follows that McGuire has no standing to seek a second hearing under Code § 15.2-1800(B) as that provision's text provides that members of the public have only a right to one hearing and his amended complaint compounds that failure by not asserting a particularized harm from the City's choice of demolition covenant. As "[a]n action filed by a party who lacks standing is a legal nullity," *Layla H. v. Commonwealth*, 81 Va. App. 116, 140 (quoting *McClary v. Jenkins*, 299 Va. 216, 221 (2020)), we hold McGuire's amended complaint constituted such a nullity. Therefore, the circuit court properly sustained the joint demurrer and dismissed his amended complaint.

## III. CONCLUSION

In conclusion, we hold that the circuit court properly sustained the City's demurrer to McGuire's amended complaint. Since the plain text of Code § 15.2-1800(B) only requires a locality to conduct one public hearing in order to comport with minimal constitutional due process requirements in making sale of its real property, McGuire was not "aggrieved," as alleged in this declaratory judgment action, by the failure of the City Council to hold additional public hearings each time the land sales contract was amended. Taking wisdom from the words of a learned circuit court judge, "Not every person spoiling for a fight in a land use case is entitled to enter the fray." *Carolinas Cement Co. v. Zoning Appeals Bd. of Warren Cnty.*, 52 Va. Cir. 6, 11 (Warren 2000) (Wetsel, J.). Hence, after the City approved the sale of the real property following their November 21, 2022 public hearing at which McGuire presented his objections, McGuire lacked standing to proceed with his amended complaint for declaratory judgment because he was not "aggrieved" by the City's decision. Thus, the circuit court did not err in sustaining the joint demurrer and dismissing McGuire's amended complaint with prejudice, and the circuit court's judgment is affirmed.

*Affirmed.*